Mark Evan DOVE, Appellant,

v.

The STATE of Texas, Appellee.

No. 60903.

Court of Criminal Appeals of Texas,
Panel No. 3.

Sept. 23, 1981.

Rehearing Denied Nov. 18, 1981.

Arthur J. Brender, Fort Worth (Court-appointed), for appellant.

Robert J. Glasgow, Dist. Atty. and Robert S. Lee, Asst. Dist. Atty., Stephenville, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and DALLY and McCORMICK, JJ.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for burglary of a habitation with intent to commit murder, in which punishment was assessed by the jury at fifteen (15) years' imprisonment.

One of appellant's contentions on appeal is that the trial court erroneously permitted the State to impeach its own witness with a prior inconsistent statement. The State replies that any error in admission of the impeachment evidence was harmless. We hold that it was not harmless, and reverse the conviction.

According to the State's witnesses, appellant's mother, Margaret Dove, entered her home to find her twenty-year-old son in a state of extreme drug-induced intoxication. After she ignored his request for the use of her car that night, appellant threw a chair into a window, causing his mother and two sisters to flee to the home of Betty Caraway, a neighbor. Appellant followed, chopped through a door with a garden hoe, and entered Caraway's house, but his mother and sisters had again fled through another door. While standing on the front porch of Caraway's house, appellant stated, "I want my mother, I am going to kill her," but eventually returned to his mother's house without accomplishing this purpose, and was found hiding in a closet by police.

Appellant's mother was called as a witness by the State, and testified to some of the facts set out above. On cross-examination, she testified that she did not believe that it was appellant's conscious objective to cause her death, and that she didn't think

he knew what he was doing. She also testified that she had attempted to "drop these charges" and stop the prosecution of her son, but the district attorney had refused. Asked if she wanted to see her son go to the penitentiary, she replied, "No, sir."

On redirect examination, the prosecutor asked appellant's mother what she told the officers who arrested appellant on the night of the offense; she replied, "I certainly didn't tell them I wanted him to go to the penitentiary, I told them I needed help and I asked them to help—" The prosecutor then inquired about a statement she made in the sheriff's office to David Ward, a district attorney's investigator, about wanting her son to go to the penitentiary, and she testified as follows:

"When I saw the statement that I signed [1] awhile ago, they showed me again, I didn't recognize my signature so I was in a state of shock or something when I came up here that night. I remember, however, that Mr. Ward said to me, 'We are going to have to send Mark to Huntsville.' And I was writing the statement when he made that statement, and I remember that got through, and I stopped and I said, 'Well, he needs to go somewhere.' I remember saying those words, Mr. Glasgow (the prosecutor). I did not agree with him that he needed to go to the Huntsville even in my state of mind at that time."

After the State rested its case, appellant rested without calling any witnesses, and the State was permitted to reopen. The prosecutor called David Ward, the investigator, who testified that he talked to appellant's mother in the sheriff's office after the offense. When the prosecutor asked if she said anything about her son going to the Texas Department of Corrections, appellant's counsel objected that the question called for hearsay. The objection was overruled, and appellant's counsel then interposed an additional objection that the prosecutor was "attempting to impeach his own

1. The written statement of the witness was not introduced in evidence and does not appear in the record.

witness . . ." This objection was overruled before counsel could complete his explanation of his ground of objection, and Ward was thus permitted to give the impeaching testimony which follows:

> "I explained to Mrs. Dove there had been a burglary of a habitation with the expressed intent to commit murder, and that this was a first-degree felony and that the State of Texas, once proceeding with this case would not withdraw it, in an effort to make her aware of the gravity of the charges that were filed against her son. *She stated to me that she wanted him to go to the penitentiary.* She had tried everything she knew to straighten him up, to get him to go to work and behave himself, were her words, and the only thing she knew that might straighten him up was the penitentiary." (Emphasis supplied.)

█ A party may not impeach his own witness unless two prerequisites are met: the witness must testify to facts injurious to that party's case, and the party must demonstrate that he was surprised by such testimony. Article 38.28, V.A.C.C.P.; *Lewis v. State*, 593 S.W.2d 704 (Tex.Cr.App. 1980); *Hunnicutt v. State*, 523 S.W.2d 244 (Tex.Cr.App.1975); *Williams v. State*, 521 S.W.2d 250 (Tex.Cr.App.1975); *Banks v. State*, 510 S.W.2d 592 (Tex.Cr.App.1974). In order to demonstrate surprise, the party must show prior conversations with or statements by the witness, outside the presence of the jury. *Lewis*, supra; *Hunnicutt*, supra; *Williams*, supra; *Banks*, supra; *Pelton v. State*, 167 Tex.Cr.R. 649, 322 S.W.2d 529 (Tex.Cr.App.1959). It is not sufficient for the party to merely claim that he is surprised. *Williams*, supra; *Banks*, supra.

█ The State concedes that in the instant case, no predicate was laid for the admission of the evidence used to impeach appellant's mother. No hearing outside the presence of the jury was conducted; no claim of surprise was made by the prosecutor; and no proof of surprise was offered. The trial court therefore erred in overruling

appellant's objection that the prosecutor was attempting to impeach his own witness. See *Zanders v. State*, 480 S.W.2d 708 (Tex. Cr.App.1972); *Wall v. State*, 417 S.W.2d 59 (Tex.Cr.App.1967).[2]

Furthermore, we cannot say that the improper admission of the impeachment evidence was harmless beyond a reasonable doubt. The fact that appellant's mother made a prior inconsistent statement may well have served to discredit, in the jury's eyes, the essentially exculpatory testimony she gave on cross-examination. Also, the fact that she once stated that she believed appellant should go to the penitentiary could not have aided him during deliberation on the issue of punishment, particularly since appellant strenuously argued for probation. In short, we find there was a reasonable possibility that the impeachment evidence may have contributed to appellant's conviction or the severity of his punishment, and this ground of error is sustained.

█ We note that in two more grounds of error, appellant complains that the evidence was insufficient to support the conviction, and because retrial in this cause would be barred if appellant is correct, we will briefly discuss these contentions. See *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

Appellant argues that the evidence was insufficient to show that he harbored the intention to commit murder when he entered his neighbor's house. Appellant's mother testified, though, that before she was forced to flee her residence, appellant stated, "I need the car tonight. If you don't let me have it, I will kill you." And as previously noted, appellant said to his neighbor immediately after his entry into her house, "I want my mother, I am going to kill her." Evidence of these utterances, considered along with appellant's actions, was sufficient to sustain the jury's finding on the issue of appellant's specific intent.

---

2. In light of the complete failure to lay a predicate for the admission of the impeaching evidence, it is unnecessary for us to consider

whether the testimony of the impeached witness was actually injurious to the State's case, as required by the above-cited authorities.

Appellant also contends that insufficient evidence was adduced to show that the habitation he entered was owned by Betty Caraway, as alleged.

On direct examination, Caraway testified that she had lived in her "old frame house" at "this address for about seventeen years." She also testified as follows:

"Q. Now, the house that you were in out there that this—you have testified this defendant broke the doors and entered—

"A. Yes.

"Q. Was that a habitation in which you lived in?

"A. Yes.

"Q. And had been living in prior to and during the time of this event?

"A. Yes."

While this testimony did not prove that Caraway held title to the property appellant invaded, it did show that she had possession of that property, which was sufficient evidence of ownership under V.T.C.A., Penal Code, § 1.07(a)(24). *Vaughn v. State*, 530 S.W.2d 558 (Tex.Cr.App.1975). The evidence was sufficient to support the conviction.

The judgment is reversed and the cause remanded.