**Luis Solis ORTEGA, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 63607.**

Court of Criminal Appeals of Texas,
Panel No. 2.

Oct. 26, 1983.

**36**

Michael R. Gibson, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and Stuart L. Leeds, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P.J., and ODOM and W. DAVIS, JJ.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for murder, wherein the punishment was assessed at fifty (50) years' imprisonment.

Initially appellant contends the court erred in allowing the prosecutor to impeach his own witness. In order to place the contention in its proper perspective, the background must be laid.

Appellant was charged by indictment with the murder of Valentine Najera Manriquez "by stabbing him in the chest and abdomen with a knife."

Briefly the State's evidence shows that on December 10, 1978 Jesus Rubio and his cousin, Jose Solarzano, went to Pike's Bar (later Chiquita Bar) in El Paso. Jose Macias, the deceased Manriquez, and the appellant were among those in the bar. Rubio heard Macias ask a man known as Manos Negros (Black Hands) for money due him for work performed for Manos. When Manos declined the request, Rubio began to chastise Manos for his failure to pay Macias. Manos used fighting words to Rubio, who grabbed a beer bottle and swung at Manos. A fight began and others joined in. What then happened and how the deceased became involved is not clear. It was shown that Manos eventually ran from the bar, and that thereafter the deceased ran from the bar chased by the appellant and another man. Several blocks away the appellant was observed hitting the deceased whose body was found in the street. Shortly thereafter, appellant was heard to make incriminating remarks in the Que Sera Sera Bar where Rubio, Macias and Solarzano had gone after the disturbance at Pike's Bar (Chiquita).

It was shown that deceased bled to death from stab wounds to the body in the heart area and to the liver.

Prior to the testimony of Rubio and Macias, the court in the jury's absence considered appellant's motion in limine concerning statements supposedly made by him in the Que Sera Sera Bar. The prosecutor stated Macias and Rubio would testify that appellant made certain statements in Spanish, and that if translated literally into English would lose their meaning and asked that Spanish colloquialism be used by the interpreter. The prosecutor stated Macias was expected to relate that he heard a voice sounding like appellant's say upon entering Que Sera Sera "Ya estuvo ya me lo heche," which was translated to mean "That's it, I've done him in." Rubio was expected to

testify appellant said to him "Ya estuvo lo marcho,"[1] which was translated to mean "That's it, He's gone."

Macias and Rubio testified as expected. The State then called Solarzano as a witness, who gave his "I was there but I didn't hear or see much" version of the events. When asked if he heard the appellant say anything at the Que Sera Sera Bar, he answered: "I didn't hear clearly, but he said something like '*Echa.*' I'm not certain what it was that he said. I was not that close to him." It was obvious that the State was not pleased with the witness. The State then established that Solarzano had earlier given a statement to the police, and tried to determine if the statement would refresh his memory. The effort was interrupted by appellant's objections that the State was trying to impeach its own witness. Confusion seemed to exist as to which procedure was involved. In answer to an objection, the court responded, "... I know they're trying to impeach him, and I'm going to permit it." At this point no predicate for impeachment was laid. After a conference at the bench out of the jury's presence, the prosecutor simply stated, "The State is generally surprised by this testimony. It's completely inconsistent." The court then announced, "I'm ruling with the State on it."

The record then reflects the following in the jury's presence:

"Q (By Mr. Hatch) (Prosecutor) Do you recall telling the police that—first of all, backing up to the incident at the Chiquita Bar. Do you recall telling the police that you saw this man that ran out of the Chiquita Bar being beaten with cue sticks and kicked?

"A The one that ran out?

"Q The one that ran out.

"A The first one?

"Q The first one.[2]

"A It was so fast that what I was able to see wasn't very much. If anything, just a kick or just the cue stick.

"Q All right. Do you recall telling the police that you saw this man being beaten with cue sticks and kicked?

"MR. ROSADO (Defense Counsel): Your Honor, at this point he has answered already and he has been impeached and I think he is taking it too far at this point.

"MR. HATCH: Your Honor, his answer is not responsive."

At a then called bench conference out of the jury's presence the court stated:

"If you want to impeach him on a material issue only, not on the first man. You keep on saying guy and man and you don't mention any names and everybody is confused. Now I'm only going to permit it as to the material, relevant facts. With that limitation only."

Back in the jury's presence the record reflects:

"Q (By Mr. Hatch) Mr. Solarzano, refer back to what took place at the Chiquita Bar[3] that night. Do you recall telling the police that Juni, the defendant in this case, came into the bar and said 'Ya mo lo eche,' do you recall him saying that?

"A I recall 'eche.'

"Q You don't recall him making that— you don't recall that statement to the police?

"A Just that, 'eche.'"

Thereafter the prosecutor handed the statement to the interpreter and asked her to read a portion thereof. Appellant's objection was overruled. The record then reflects:

"MRS. DELGADILLO (Interpreter): It was about 10 to 15 minutes later Juni (appellant) and Casada showed up at this

---

1. The interpreter stated, "That's it, literally it would be he marched him."

2. Reference here apparently is to Manos Negros.

3. The prosecutor apparently meant to refer to the Que Sera Sera Bar.

bar, and it was Juni that said,—this is the Spanish 'Ya me lo eche.' " [4]

Appellant again objected and asked the court to instruct the jury to disregard the portion of the statement read. The objection and request were overruled. The witness was then excused.

In *Dove v. State,* 623 S.W.2d 346, 348 (Tex.Cr.App.1981), this court stated:

"A party may not impeach his own witness unless *two* prerequisites are met: the witness must testify to facts injurious to that party's case, and the party must demonstrate that he was surprised by such testimony. Article 38.28, V.A.C. C.P.; *Lewis v. State,* 593 S.W.2d 704 (Tex.Cr.App.1980); *Hunnicutt v. State,* 523 S.W.2d 244 (Tex.Cr.App.1975); *Williams v. State,* 521 S.W.2d 250 (Tex.Cr. App.1975); *Banks v. State,* 510 S.W.2d 592 (Tex.Cr.App.1974). In order to demonstrate surprise, the party must show prior conversations with or statements by the witness, outside the presence of the jury. *Lewis,* supra; *Hunnicutt,* supra; *Williams,* supra; *Banks,* supra; *Pelton v. State,* 167 Tex.Cr.R. 649, 322 S.W.2d 529 (Tex.Cr.App.1959). *It is not sufficient for the party to merely claim that he is surprised. Williams,* supra; *Banks,* supra. (Emphasis supplied.)

In *Wall v. State,* 417 S.W.2d 59 (Tex.Cr. App.1967), this court also stated:

"First, a party introducing a witness cannot attack his or her testimony unless the witness has stated facts injurious to such party. *It is not sufficient that the witness merely fails to testify as expected or to remember facts favorable to the party calling the witness."* (Emphasis supplied.)

■ Here Solarzano did not state facts injurious to the State's case. The State does not even now so claim. He merely failed to testify as expected by the prosecution. Thus the first prerequisite of the necessary predicate to impeach one's own witness was not met. The second prerequisite—surprise, is not met by merely or simply claiming surprise. Here the prosecutor merely stated the State was "generally surprised."

The question remains whether the obvious error was reversible error. The first effort at impeachment involved whether Manos Negros was being kicked and hit as he departed the Chiquita Bar (formerly Pike's). Earlier Solarzano testified he saw Manos run out but didn't see him hit or touched. When pressed upon attempted impeachment, he stated he wasn't able to "see ... very much. If anything, just a kick or just the cue stick." Upon objection the court indicated this was not a material issue. No further effort at impeachment on this issue was made. Next Solarzano continued to insist all he heard appellant say in the second bar was "eche." The prosecutor then had the interpreter read from the statement Solarzano admitted he had given the police, which showed Solarzano told the police appellant had said, "Ya me lo eche." The phrase was not translated to the jury, though it apparently had been earlier when Macias testified. Macias, Rubio and Solarzano all testified through an interpreter.

Given the circumstances of the case, we conclude that the error was harmless error beyond a reasonable doubt.

■ Next appellant contends the court erred in refusing to instruct the jury to disregard the prosecutor's argument which was outside the record after sustaining an objection to such argument.

At the guilt stage of the trial the assistant district attorney argued concerning the testimony of a witness, "... You saw him sitting there during the course of his testimony pondering what answer he was going to give, what answer would keep him out of trouble. What answer could he give without getting this man mad at him so that he can go back and live in that community? He knew that he was stuck ...."

"MR. ROSADO (Appellant's counsel): I object to that testimony or that argu-

---

4. The Spanish phrase was not here interpreted for the jurors.

ment. I don't believe that that is based on the record at all.

"THE COURT: Well, I'm inclined to sustain the objection.

"MR. WEISER (Prosecutor): Your Honor, that is a reasonable inference drawn from the evidence.

"MR. ROSADO: I ask the Court to instruct the jury to disregard the last part of Mr. Hatch's argument.

"THE COURT: I'm going to sustain the objection."

The prosecutor clearly had the right to comment on the manner of the witness' testimony, a matter the jury could have observed. He then inferred a reason for such conduct. The objection was interposed, and while the court indicated it was inclined to grant, no ruling was obtained. The appellant then requested an instruction to disregard. The court responded by making a definite ruling on the objection. The appellant requested no further relief. Without an adverse ruling on the request for an instruction to disregard, nothing is presented for review. *Nastu v. State,* 589 S.W.2d 434 (Tex.Cr.App.1979), cert. den. 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862.

Further, if there was any error at all, it was harmless beyond a reasonable doubt.

Lastly, again without citation of authority, appellant complains of certain translations. Several witnesses testified as to statements made in Spanish by the appellant at the Que, Sera Sera Bar. The prosecutor explained, prior to the testimony, that a literal translation from Spanish into English would cause the statements to lose their meaning, and asked the translation be made from the Spanish colloquialism. After hearing the statements in Spanish, the Spanish speaking trial judge agreed with the interpreter's translation of the Spanish colloquialism into English. Appellant objected to the failure to provide a literal translation and was overruled. There is no claim that the translation given before the jury was an inaccurate one. We perceive no error under the circumstances.

The judgment is affirmed.