**Donald Joseph ELLIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 0143-83.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 19, 1984.

Catherine E. Greene and Janet Seymour Morrow (court appointed on appeal only), Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Ray Elvin Speece, Tom Henderson and Chuck Rosenthal, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., and Cathleen Riedel, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

This appeal involves convictions from two counts of aggravated robbery in the same indictment. Punishment, enhanced by allegation and proof of two prior felony convictions, was assessed at life imprisonment on each count following the jury verdicts.

On appeal the appellant, inter alia, urged the trial court erred in not allowing him to call his co-defendant, Ballard, before the jury to assert his (Ballard's) claim of Fifth Amendment protection against self-incrimination. Appellant argues the assertion of the privilege against self-incrimination by Ballard was not a legitimate claim of the privilege but was a part of a prior plea bargain agreement, and appellant's counsel was surprised by Ballard's refusal to testify.

The Houston Court of Appeals (1st Dist.) affirmed the convictions, holding, inter alia, the trial court did not err in refusing to allow appellant to call the co-defendant before the jury to assert to his previous claim of Fifth Amendment privilege against self-incrimination. *Ellis v. State*, 646 S.W.2d 554 (Tex.App.—Houston [1st Dist.] 1982). We granted appellant's petition for discretionary review to determine the correctness of that portion of the decision below.

The record revealed that the alleged robberies occurred at Jones' Apothecary Stores at different locations in Harris County. The first occurred on March 26, 1981, and the second on April 22, 1981. Cash and drugs were taken in each robbery. Appellant and Charles Ballard were identified by witnesses as the two men involved in both robberies.

Appellant testified and denied involvement in either robbery. He testified that during April, 1981, he was seriously ill with infectious hepatitis at his ex-wife's house. He stated he had loaned Ballard his car for several weeks while he was ill. His former wife corroborated appellant's testimony as to his illness and loaning the car to Ballard. Other defense witnesses testified they were in business meetings with appellant about the time of the March robbery.

Turning to appellant's contention, we observe that appellant filed a pre-trial motion "to require the prosecution to reveal any agreement with a witness that could influ-

ence his testimony." The motion was expressly directed to Ballard, and asked the prosecutor to reveal any concessions or promises made to Ballard which could occur "in the event ... Ballard ... cooperated with the prosecution by testifying against the Defendant herein."

When prior to trial the said motion was called for consideration, a somewhat disjointed colloquy at the bench occurred. It does appear the prosecutor stated Ballard had plead guilty to two counts of an indictment, and two counts had been dismissed; that part of the agreement was that Ballard was not to testify for either party at appellant's trial. He stated he had not talked to Ballard, but to his lawyer and it was understood Ballard could be "recharged" with the dismissed counts. Appellant's counsel stated this was what he wanted to bring out in the presence of the jury. After some further discussion about the dismissed counts and count three of appellant's indictment which had been abandoned by the State, the court stated to appellant's counsel, "I don't know what you expect to prove." The record then reflects:

"MR. PANDAK (Defense Counsel): Not to fully disclose our hand, but what we intend to do is put the co-defendant on voir dire and put some evidence on for this court to show that this witness is completely adverse, and that I'll be able to treat him as if the State had called him to the stand.

"MR. ROSENTHAL (Prosecutor): There's no such rule in the State of Texas.

"MR. PANDAK: Yes, I know that, but that's the intent that we have.

"MR. HENDERSON (Prosecutor): We don't have an adverse witness rule. If he calls him, he's liable for everything he says."

The court then suggested that it would carry the motion, and later allow appellant to tender the witness Ballard out of the jury's presence in order to fully develop the record when Ballard's attorney could be present. Appellant agreed.

After the State rested its case at the guilt stage of the trial without calling Ballard as a witness, and prior to the appellant offering any evidence, the court indicated Ballard would be called outside the jury's presence. It also noted Ballard apparently wanted to discharge his court-appointed counsel.

Prior to being sworn, Ballard stated he would refuse to answer "anything on this case" on the ground it might tend to incriminate him. After being sworn, Ballard refused to answer any questions until he talked to an attorney. He didn't want to be incriminated in any way. At this point, F.M. Stover, his court-appointed counsel, stated for the record he represented Ballard on his guilty plea, that when he attempted to impart some legal information the day before Ballard had refused to talk to him. Counsel then, in open court, advised Ballard he did not, under the federal and state constitutions, have to give testimony that might tend to incriminate him. Attorney Stover stated he had previously recommended Ballard not testify, and he was now urging Ballard not to testify in appellant's case.

In response to the court's inquiry, Ballard took "the 5th" and refused to answer any questions. Ballard refused to answer appellant's question that he had told a Mr. Ellis [1] he would testify. Appellant then claimed surprise, asked the court to rule thereon so he could have Ellis impeach "this testimony." The prosecutor then informed the court that Ballard had asked to withdraw his guilty pleas entered in another court. After appellant indicated he had no further questions of Ballard, the court inquired:

"You want to put this testimony on in front of the jury, or do you not?

"MR. PANDAK: Your Honor, I don't want it unless—until after my ruling on the surprise is made. I don't think it would be appropriate at this time."

---

**1.** The record does not make clear who "Mr. Ellis" is.

Ballard was removed from the courtroom and the court offered to hear "proof as to surprise." Attorney Stover was called by the appellant. He testified that before or at the time of Ballard's guilty pleas he told appellant's counsel he had no objection to counsel talking to Ballard; that he saw counsel conversing with Ballard, but didn't know what was said. Stover vaguely recalled a conversation with appellant's counsel and other individuals in another court in which he was asked to be present at the instant trial; that he had stated he assumed Ballard would not testify, and appellant's counsel indicated Ballard would testify. Appellant's counsel asked but later withdrew the question whether the day before Stover had told him (appellant's counsel) Ballard would testify "but maybe not to my liking." Thereafter attorney Stover was excused, and appellant's counsel stated:

"Your Honor, we will put on no more evidence at this time, but as to claiming surprise and the right for any witness claiming the 5th, we're saying that applies, if it comes unexpectedly, and we are asking at this time for a ruling on surprise based upon the evidence we have heard so far, solely on that evidence and not anything that was maybe discussed off the record."

After discussing the claim of surprise, the court stated:

"... You haven't expressed any testimony that would lead me to feel that you would be surprised. Therefore, I'll overrule whatever surprise you may have in mind. The witness didn't testify ... refused to testify under the advise of Counsel.

"MR. PANDAK: Thank you, Your Honor."

As can be seen, appellant never secured a ruling on placing Ballard on the stand in the presence of the jury. He secured an adverse ruling on the ground of surprise which is part of the predicate for impeaching one's own witness before the trier of facts,[2] but not a necessary part of the predicate for the contention now urged on appeal. Appellant did not clearly articulate to the trial court his present contention that under the circumstances he had the right to call a co-defendant as a witness to testify before the jury that he (co-defendant) had claimed his privilege against self-incrimination and to explain his reason for so claiming it. Appellant has preserved nothing for review.

If it can be argued that appellant did preserve his contention for review, this court has repeatedly held that a defendant has no right to have a witness assert or invoke his Fifth Amendment privilege against self-incrimination in the presence of the jury. *Rodriguez v. State*, 513 S.W.2d 594 (Tex.Cr.App.1974); *Victoria v. State*, 522 S.W.2d 919 (Tex.Cr.App.1975); *Mendoza v. State*, 552 S.W.2d 444 (Tex.Cr.App. 1977).

In *Mendoza*, supra, at p. 450, this court wrote:

"In *Rodriguez v. State*, 513 S.W.2d 594 (Tex.Cr.App.1974), we reiterated the general rule that when a witness, other than the accused, declines to testify on the ground that his answers would tend to incriminate him, that refusal alone cannot be made the basis of any infer-

**2.** A party may not impeach his own witness unless two prerequisites are met: the witness must first testify to facts injurious to that party's case, and the party must demonstrate that he was surprised by such testimony. *Dove v. State*, 623 S.W.2d 346, 348 (Tex.Cr.App.1981). See also Article 38.28, V.A.C.C.P.; *Lewis v. State*, 593 S.W.2d 704 (Tex.Cr.App.1980); *Ortega v. State*, 659 S.W.2d 35 (Tex.Cr.App.1983); *Goodman v. State*, 665 S.W.2d 788 (Tex.Cr.App.1984). In order to demonstrate surprise, the party must show (outside the presence of the jury) prior conversation with or statements by the witness.

*Lewis v. State*, supra; *Hunnicutt v. State*, 523 S.W.2d 244 (Tex.Cr.App.1975). It is not sufficient for the party to merely claim that he is surprised. *Williams v. State*, 521 S.W.2d 250 (Tex.Cr.App.1975); *Banks v. State*, 510 S.W.2d 592 (Tex.Cr.App.1974). Further, it is not sufficient that the witness merely fails to testify as expected or to remember facts favorably to the party calling the witness. He must have stated facts injurious to the party calling him (the witness). *Wall v. State*, 417 S.W.2d 59 (Tex.Cr. App.1967); *Dove v. State*, supra.

ence by the jury, *either favorable to the prosecution or to the accused.* The rationale is that in refusing to answer a question the witness is exercising a personal constitutional right which should neither help nor harm any third person. *Glasper v. State,* 486 S.W.2d 350 (Tex. Cr.App.1972). In *Rodriguez,* we held it was not error for the trial court to refuse appellant's motion to have witnesses invoke the Fifth Amendment in the presence of the jury.

"The record in the instant case shows that defense counsel was well aware before trial of Ybarra's intent not to testify. Therefore, appellant's argument that the court should not have granted the State's motion in limine is tantamount to an assertion that Ybarra should have been allowed to invoke the Fifth Amendment before the jury. Such conduct would have been improper, and the trial court did not err in sustaining the State's motion which sought to prevent this occurrence. *Victoria v. State,* 522 S.W.2d 919 (Tex.Cr.App.1975); *Rodriguez v. State,* supra; *Glasper v. State,* supra.

"Appellant's reliance on *Washington v. Texas* [388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)], supra, is misplaced. That case held unconstitutional prior Article 82 of Vernon's Ann.Tex.P.C., 1925, which denied an accused the right to call as defense witnesses persons charged as principals. The decision in *Washington* rested on the ground of an arbitrary statutory exclusion of potential witnesses. The rule of such cases as *Rodriguez v. State,* supra; *Glasper v. State,* supra; and *Victoria v. State,* supra, rests on a different footing: that of insuring that a third party witness' invocation of the Fifth Amendment has a neutral effect on the accused and the State. While the expansive dicta in *Washington* concerning a defendant's right to compulsory process may have been appropriate in the context of the facts of that case, it is not controlling here."

It has also been made clear that an individual's constitutional right against self-in-

crimination is superior to the constitutional right to compulsory process. *Whitmore v. State,* 570 S.W.2d 889 (Tex.Cr.App.1976); *Rodriguez v. State,* supra; *Glasper v. State,* 486 S.W.2d 350 (Tex.Cr.App.1972). See also *United States v. Roberts,* 503 F.2d 598 (9th Cir.1974), cert. den. 419 U.S. 1113, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975).

The judgment of the Court of Appeals is affirmed.

CLINTON, Judge, concurring.

Since it is *never* error for a trial court to refuse to permit either party to call a witness for the purpose of letting the jury hear an invocation of Fifth Amendment privilege against selfincrimination, I join the latter portion of the opinion of the Court to that effect, Maj. Opinion pp. 382–383. Insofar as the plea bargain and threatened retaliation are concerned, appellant was free to spread the facts about those matters on the record separate and apart from the Fifth Amendment ritual, and thereby explain why Ballard did not testify for appellant. On that basis I concur in that part of the opinion, and, in the judgment of the court.

I would be inclined toward the view of Judge Teague—that the *agreement* itself constituted a denial of due process to appellant by depriving him of the testimony of a material witness—if I could only read that to be the complaint treated by the court of appeals and raised for our review. But a fair reading of appellant's petition for discretionary review and brief clearly reveals the contention to be that the *jury* was deprived of information regarding the agreement, and perforce the co-defendant's unavailability. The record simply fails to support this.

MILLER, Judge, concurring.

I agree that appellant has preserved nothing for review. Appellant's contention, as pointed out in the majority opinion, was that he should have been allowed to bring out in front of the jury evidence showing that the co-defendant would claim

his Fifth Amendment privilege because, at least in part, he agreed to do so as part of a plea bargain agreement with the State; and that the co-defendant's lawyer had been informed that the State could recharge the co-defendant with dismissed counts if he did not live up to the agreement. The record reflects that the trial court carried appellant's request so that appellant could have an out of presence hearing. Appellant never reurged his request and never sought to call the co-defendant to the stand.

The majority opinion goes further and holds that had appellant's contention been preserved it would have been found to be without merit. The majority's discussion supporting this holding fails, however, to address the crux of appellant's ground of error—that the co-defendant was claiming his Fifth Amendment privilege not of his own volition but because: 1) he had been made to do so as part of a plea bargain with the prosecution, and 2) he had been threatened with retaliation from the prosecution if he didn't live up to the plea bargain. Thus, claims appellant, his co-defendant's invocation of the Fifth Amendment should not have "a neutral effect on the accused and the state." [1]

Since this additional majority holding does not properly address appellant's claim and also is unnecessary to resolution of the case, I cannot agree with it. To that portion of the majority opinion which states that appellant preserved nothing for review, I concur.

TEAGUE, Judge, dissenting.

Because counsel for the appellant inartfully worded her ground of error, concerning the issue that was actually before the First Court of Appeals, this caused the train to get off the track back when the case reached the train station that houses the First Court of Appeals. And it is still off the track.

Counsel asserted that "It was error for the trial judge not to allow appellant to call his co-defendant before the jury to assert his claim of fifth amendment protection against self-incrimination." Of course, standing alone, this ground of error would be totally and wholly without merit. And counsel for appellant has recognized this in the briefs that she has filed in this cause.

However, counsel for appellant eventually gets to what I call the "nitty-gritty" issue that is in this cause, namely, whether the condition that the prosecutor placed on a plea bargain agreement he had made with appellant's co-defendant, which plea bargain agreement consisted of the prosecutor agreeing to move to dismiss two of four charges of robbery and also agreeing to recommend to the trial judge that the co-defendant be assessed a 20 year sentence on each of the two charges to which he would plead guilty, effectively deprived the appellant of due process and due course of law as provided for in both the Federal and State Constitutions.[1]

The condition that was placed on the plea bargain agreement was that the co-defendant would not testify when appellant's case came to trial. The prosecutor admonished the co-defendant that if he reneged on the agreement, then he, the prosecutor, would refile the two dismissed charges. The record reflects that the plea bargain agreement was in all things executed and carried out. When appellant called the co-defendant to testify he, the co-defendant, understandably, refused to testify.

I find that the conditional plea bargain agreement effectively deprived the appellant of due process of law under the Fourteenth Amendment to the Federal Constitution, as well as due course of law under the State Constitution.

Simply because of the legal muscle that a prosecuting attorney has in the State of Texas, the above conditional plea bargain agreement makes the facts in this case

---

**1.** Majority opinion quoting *Mendoza v. State*, 552 S.W.2d 444 (Tex.Cr.App.1977).

**1.** The evidence concerning the conditional plea bargain agreement was developed in the trial court through statements by the prosecutor and trial counsel for appellant.

more egregious than those found in *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972). There, the facts reflected that the defendant called a witness to testify. Outside of the presence of the jury, the trial judge admonished the witness that he was not required to testify, that if he lied under oath when he testified, the court would personally see that his case went to the grand jury, that he could be convicted of perjury, that in that event he would probably have to serve more time than he was presently serving, and such would be held against him when he was considered for parole. The witness then declined to testify and was excused. The Supreme Court found that the trial judge committed federal constitutional reversible error.

Finding that the facts of this case cannot be distinguished from *Webb v. Texas*, supra, I am compelled to respectfully dissent.