TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00108-CR







Willie Lloyd, Jr., Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT


NO. A-99-0500-S, HONORABLE THOMAS GOSSETT, JUDGE PRESIDING






 

 Willie Lloyd, Jr. ("Lloyd") seeks reversal of the district court's judgment, finding him
guilty of possession of a controlled substance with intent to deliver. See Tex. Health & Safety Code
Ann. § 481.115(a), (d) (West Supp. 2000). Lloyd raises four issues on appeal: (1) the factual and
legal sufficiency of the evidence, (2) the court's refusal to require codefendant Hardin to testify
before the jury, (3) the court's denial of his request for a new attorney, and (4) ineffective assistance
of counsel. Finding no reversible error on these issues, we will affirm the judgment of the district
court.


Facts

 On May 2, 1999, officers of the Rio Concho Drug Task Force arrested Willie
Lloyd, Jr. and his girlfriend, Sara Hardin ("Hardin"), as they drove away from a park known for
drug trafficking. Officers then searched a motel room registered in the name of Hardin pursuant
to a warrant.

 The room search revealed a Sentry lock box containing 198.5 grams of crack
cocaine in seven separate bags. Most of the cocaine was in lump form, but some had been cut into
individual rocks for resale. The same box contained three large rings, one with the name "Jim"
inscribed on it. Testimony at trial revealed that Lloyd's street-name or nickname was "Jim
Dandy." The box also contained a letter to "Willie," who was referred to later in the body of the
letter as "Jim." Elsewhere in the room, police found clothing consistent with Lloyd's size
(including men's boxer shorts), personal mail, documents, and medication, all clearly marked as
belonging to Lloyd. Police also uncovered a plate with a razor blade, paraphernalia commonly
used for cutting larger chunks of cocaine into rocks that are then sold on the street for $20 each. 
In addition, police later recovered motel guest records indicating that Lloyd's mother came to pick
up the contents of the room after its occupants were arrested. 

 In searching the vehicle, police found a rental agreement showing that the car was
leased to Lloyd, with Hardin listed as an additional driver. In the vehicle's trunk, they discovered
a second lock box containing a drug ledger, a GTE calling card with Lloyd's name on it, several
pieces of men's jewelry, and $3,700 in cash. The keys to both lock boxes were found together
with the keys to Lloyd's leased vehicle. In addition, police found $275 in cash on Lloyd's person.

 Lloyd was indicted for possession of between four grams and two-hundred grams
of a controlled substance with intent to deliver. On January 20, 2000, a jury convicted Lloyd of
this charge. The judge sentenced Lloyd to fifty years' confinement in the Institutional Division
of the Texas Department of Criminal Justice. Lloyd appeals the trial court's judgment. 


Discussion

 Lloyd seeks review of (1) the factual and legal sufficiency of the evidence, (2) the
court's refusal to require codefendant Hardin to testify before the jury, (3) the court's denial of
his request for a new attorney, and (4) his claim of ineffective assistance of counsel. 

 First, Lloyd contends that the evidence was factually and legally insufficient to
support his conviction. In determining the legal sufficiency of the evidence to support a criminal
conviction, we consider whether, after viewing the evidence in the light most favorable to the
verdict, any rational trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Geesa v. State, 820 S.W.2d
154, 157 (Tex. Crim. App. 1991); Griffin v. State, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). 
In contrast, when conducting a factual sufficiency review, we consider "all the evidence equally,
including the testimony of defense witnesses and the existence of alternative hypotheses." Orona
v. State, 836 S.W.2d 319, 321 (Tex. App.--Austin 1992, no pet.). We will set aside a verdict for
factual insufficiency "only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust." Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone
v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd untimely filed).

 In order to prove the unlawful possession of a controlled substance, the State must
show that (1) the accused exercised care, control, and management over the contraband, and (2)
the accused knew that what he possessed was contraband. Deshong v. State, 625 S.W.2d 327, 329
(Tex. Crim. App. 1981). When the accused is not in exclusive possession of the place where the
controlled substances are found, additional facts and circumstances must be present that
affirmatively link the accused to the contraband. Id. In making a determination of whether
sufficient affirmative links exist, each case must be reviewed on its own facts. Whitworth v. State,
808 S.W.2d 566, 569 (Tex. App.--Austin 1991, pet. ref'd). 

 The record shows that 198.5 grams of crack cocaine were found in a lock box in
a motel room registered to Lloyd's girlfriend. Some of the cocaine had been cut into individual
rocks that are typically used for resale. There is also evidence showing that Lloyd was staying
in the motel room, including prescription medicine, personal mail in his name, and clothing. In
addition, the motel's business records indicate that after Lloyd's arrest, his mother attempted to
pick up the room's contents. 

 Evidence that Lloyd had access to the cocaine in the lock box includes the fact that
the key to the box was found in his possession on the same chain as the keys to the vehicle he was
driving at the time of his arrest. In addition, jewelry and a letter belonging to Lloyd were found
in the same lock box as the cocaine. 

 The second lock box, which was found in Lloyd's vehicle, offers further support
for the finding that Lloyd knew he possessed a controlled substance and had an intent to deliver. 
The key to this box was on the same chain as the keys to the vehicle and the first lock box. The
second box contained a drug ledger, a calling card with Lloyd's name on it, several pieces of
men's jewelry, and $3,700 in cash. The police also found $275 on Lloyd's person.(1) Lloyd had
no known, legitimate employment at the time of his arrest. 

 Taken as a whole, we conclude that these facts and circumstances are sufficient to
create an affirmative link between Lloyd and the cocaine found in the motel room. See Deshong,
625 S.W.2d at 329. On this basis, a rational jury could have found that Lloyd exercised care,
control, and management over the drug, and that he knew the cocaine was contraband. See id.

 Lloyd also contends that the State did not sufficiently prove that the cocaine in his
possession weighed between four grams and two-hundred grams. Specifically, he claims that the
laboratory testing process was flawed because after taking representative samples from each of the
bags found in the lock box, the contents of the bags were combined before weighing. The record
shows that J.R. Burch of the Texas Department of Public Safety Crime Laboratory followed an
approved procedure whereby he visually inspected the submitted substances and observed them
to be similar material. He then analyzed a portion from each of the submitted bags of suspected
cocaine to make sure they were all the same substance. Once these tests were done, the entire
contents were combined for the remainder of the testing, resulting in a total weight of 198.5
grams. 

 In Gabriel v. State, the court found that when only five of fifty-four bags of crack
cocaine had been scientifically tested and found to be ninety-nine percent cocaine, and the
remaining bags had been judged identical on visual inspection, "[i]t was rational for the fact finder
to conclude that identically packaged substances, which appear to be the same substance, are in
fact the same substance." Gabriel v. State, 900 S.W.2d 721, 722 (Tex. Crim. App. 1995). 
Gabriel further held that "[t]he manner of testing the substances by random sampling goes only
to the weight the jury may give to the tested substances in determining the untested substance is
the same as the tested substance." Id. Accordingly, the jury in this case was free to accept the
evidence given by the chemist and find that Lloyd possessed between four grams and two-hundred
grams of cocaine. See id. This is especially true given that the weight determined by the
laboratory was 198.5 grams, near the maximum of the possession category with which Lloyd was
charged.

 When viewed in the light most favorable to the prosecution, we find that this
evidence is legally sufficient to support the jury's finding that Lloyd possessed between four grams
and two-hundred grams of cocaine, that he had knowledge of the controlled substance in his
possession, and that he intended to deliver it. See Jackson, 443 U.S. at 318-19; Geesa, 820
S.W.2d at 157. Viewing all of the evidence, we do not conclude that the jury's finding is so
contrary to the overwhelming weight of the evidence as to be wrong or unjust. See Clewis, 922
S.W.2d at 129. We overrule Lloyd's legal and factual challenges to the sufficiency of the
evidence.

 Lloyd's next issue concerns the refusal of the court to require the testimony of
codefendant Hardin before the jury. The record shows that Lloyd called Hardin to testify in a
hearing outside the jury's presence. During this hearing, Hardin invoked her Fifth Amendment
rights. At the conclusion of the hearing, the court, defense counsel, and the State agreed that
Hardin should not invoke her constitutional right to refuse to testify in front of the jury. We find
that the case law on this issue does not support Lloyd's contention of error. "[T]his court has
repeatedly held that a defendant has no right to have a witness assert or invoke his Fifth
Amendment privilege against self-incrimination in the presence of the jury." Ellis v. State, 683
S.W.2d 379, 382 (Tex. Crim. App. 1984) (citations omitted); see Mendoza v. State, 552 S.W.2d
444, 450 (Tex. Crim. App. 1977); Rodriguez v. State, 513 S.W.2d 594, 596 (Tex. Crim. App.
1974) (finding that when witness takes Fifth Amendment, refusal to testify alone cannot be basis
of any inference by jury). Accordingly, we overrule Lloyd's second issue.

 The final two issues raised by Lloyd involve the adequacy of counsel. Lloyd
contends that the trial court's denial of his request for a new attorney constituted a denial of his
right to counsel. Additionally, he argues that the failure of his counsel to object to the
insufficiency of the evidence and to the court's refusal to require the testimony of Hardin before
the jury amounted to ineffective assistance of counsel.

 A defendant has the constitutional right to either retain counsel or have an attorney
appointed by the court. See Tex. Const. art. I, § 10. In this case, Lloyd chose to retain counsel. 
The record shows that Lloyd voiced his displeasure with his retained counsel at a pretrial hearing
held January 4, 2000, two weeks before the start of trial. As reason for his complaint, Lloyd cited
both a general lack of attorney-client communication and the refusal of his counsel to file certain
motions. Upon further questioning, Lloyd revealed that he wanted his counsel to file a motion to
drop the intent to deliver charge. The trial court responded that the State would be unlikely to
agree to such a request and that such a motion would be ill-advised. The court also informed
Lloyd that he had a good attorney and to think seriously before making a change. Lloyd did not
speak further on the issue and did not revisit the matter at subsequent hearings or at trial. Because
the record shows that Lloyd was represented by counsel both before and at trial, we do not find
that Lloyd has preserved an issue regarding his right to counsel for us to review.

 In order to show ineffective assistance of counsel, defendant must satisfy a two-pronged test. Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990); Hernandez v.
State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986); Strickland v. Washington, 466 U.S. 668, 687
(1984). The benchmark for judging any claim of ineffectiveness is whether counsel's conduct so
undermined the proper functioning of the adversarial process that the trial cannot be relied on to
have produced a just result. Welborn, 785 S.W.2d at 393 (citations omitted). The applicable test
requires showing that (1) defense counsel's performance was deficient, and (2) the deficient
performance prejudiced the defense. Id. The prejudice prong requires the defendant to show that
there is a reasonable probability that, but for counsel's unprofessional errors, the result of the
proceedings would have been different. Id. In this case, Lloyd bases his claim of deficiency on
his counsel's failure to object to the sufficiency of the evidence and to the court's refusal to require
Hardin's testimony. However, we conclude that the trial court and case law supported defense
counsel's position on both issues. As noted above, the court correctly admitted the evidence of
the weight of the drug in Lloyd's possession and refused to require codefendant Hardin to invoke
her Fifth Amendment right in front of the jury. See Gabriel, 900 S.W.2d at 722; Ellis, 683
S.W.2d at 382. These are the only grounds on which Lloyd bases his contention of ineffective
assistance of counsel. Neither issue contains a point of error which is reversible on appeal. See
Gabriel, 900 S.W.2d at 722; Ellis, 683 S.W.2d at 382. Therefore, Lloyd cannot satisfy the first
prong of the requisite test by showing that defense counsel's performance was deficient. See
Welborn, 785 S.W.2d at 393. Accordingly, we hold that the record does not support a claim of
ineffective assistance of counsel. 


Conclusion

 Having determined that the evidence supports the trial court's verdict, we affirm
the conviction of Willie Lloyd, Jr. for possession of a controlled substance with intent to deliver.



 

 Mack Kidd, Justice

Before Justices Jones, Kidd and Yeakel

Affirmed

Filed: November 2, 2000

Do Not Publish

1. These sums were primarily in $20 denominations. The average price of a rock of cocaine in
San Angelo is $20. The approximate street value of the 198.5 grams found in the first lock box is
$39,000.


 privilege against self-incrimination in the presence of the jury." Ellis v. State, 683
S.W.2d 379, 382 (Tex. Crim. App. 1984) (citations omitted); see Mendoza v. State, 552 S.W.2d
444, 450 (Tex. Crim. App. 1977); Rodriguez v. State, 513 S.W.2d 594, 596 (Tex. Crim. App.
1974) (finding that when witness takes Fifth Amendment, refusal to testify alone cannot be basis
of any inference by jury). Accordingly, we overrule Lloyd's second issue.

 The final two issues raised by Lloyd involve the adequacy of counsel. Lloyd
contends that the trial court's denial of his request for a new attorney constituted a denial of his
right to counsel. Additionally, he argues that the failure of his counsel to object to the
insufficiency of the evidence and to the court's refusal to require the testimony of Hardin before
the jury amounted to ineffective assistance of counsel.

 A defendant has the constitutional right to either retain counsel or have an attorney
appointed by the court. See Tex. Const. art. I, § 10. In this case, Lloyd chose to retain counsel. 
The record shows that Lloyd voiced his displeasure with his retained counsel at a pretrial hearing
held January 4, 2000, two weeks before the start of trial. As reason for his complaint, Lloyd cited
both a general lack of attorney-client communication and the refusal of his counsel to file certain
motions. Upon further questioning, Lloyd revealed that he wanted his counsel to file a motion to
drop the intent to deliver charge. The trial court responded that the State would be unlikely to
agree to such a request and that such a motion would be ill-advised. The court also informed
Lloyd that he had a good attorney and to think seriously before making a change. Lloyd did not
speak further on the issue and did not revisit the matter at subsequent hearings or at trial. Because
the record shows that Lloyd was represented by counsel both before and at trial, we do not find
that Lloyd has preserved an issue regarding his right to counsel for us to review.

 In order to show ineffective assistance of counsel, defendant must satisfy a two-pronged test. Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990); Hernandez v.
State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986); Strickland v. Washington, 466 U.S. 668, 687
(1984). The benchmark for judging any claim of ineffectiveness is whether counsel's conduct so
undermined the proper functioning of the adversarial process that the trial cannot be relied on to
have produced a just result. Welborn, 785 S.W.2d at 393 (citations omitted). The applicable test
requires showing that (1) defense counsel's performance was deficient, and (2) the deficient
performance prejudiced the defense. Id. The prejudice prong requires the defendant to show that
there is a reasonable probability that, but for counsel's unprofessional errors, the result of the
proceedings would have been different. Id. In this case, Lloyd bases his claim of deficiency on
his counsel's failure to object to the sufficiency of the evidence and to the court's refusal to require
Hardin's testimony. However, we conclude that the trial court and case law supported defense
counsel's position on both issues. As noted above, the court correctly admitted the evidence of
the weight of the drug in L