**David Deyton SAFARI, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–94–00751–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 29, 1997.

---

David Deyton Safari, Houston, for appellant.

John B. Holmes, Carol M. Cameron, Houston, for appellee.

Before HEDGES, COHEN and TAFT, JJ.

## OPINION

HEDGES, Justice.

A jury found appellant, David Deyton Safari, guilty of unauthorized use of an automobile, and assessed punishment at 10 years in prison and a $5,000 fine. In four points of error, appellant argues that (1) the trial court erred in allowing a defense witness to invoke his right to remain silent and not testify after direct examination had begun; (2) trial counsel rendered ineffective assistance; (3) the trial court erred in failing to instruct the jury on the full range of punishment options; and (4) the trial court's conduct throughout the trial denied him due process. We affirm.

## FACTS

At 5:35 a.m. on July 7, 1991, Officers B.W. Truss and B. Woodall stopped a 1991 BMW for speeding on Memorial Drive. Appellant was driving, and Dennis Fortner was a passenger. Appellant and Fortner were sweating heavily when stopped, and neither had a driver's license. Appellant, who identified himself as Jian Safavi, had no proof of liability insurance. The officers testified that appellant said he had borrowed the car but could not remember from whom. According to the officers, he then said that he had borrowed it from his aunt, Everette Lawley, but he could not give a physical description of his aunt or remember her address.

Officer Truss arrested appellant for driving while his license was suspended and arrested Fortner for public intoxication. The officer inventoried the vehicle and discovered two credit cards in the name of Robert P. Harron, two cellular telephones, a pair of binoculars, a brown briefcase, cassette tapes, a Lexus key chain, five screwdrivers, two

flashlights, and two bottles of wine. The license plate number matched the vehicle identification number (VIN) under the windshield, but the car appeared newer than stated on the registration. The license plate and VIN were registered to a Mr. Lawley.

Officer Truss had the vehicle towed. The actual VIN was located and revealed the owners to be Judith and Martin Fein. The Feins had reported their 1991 BMW stolen on June 13, 1991. Georgia Lawley testified that the VIN and license plate to her BMW were stolen in the Village area on or before July 7, 1991. Ms. Lawley testified that she had no nephews and had never met anyone named Jian Safavi.

Judith Fein testified that when the stolen BMW was returned to her, the "525" chrome inlay had been changed to read "535" in gold letters, and the automobile had sustained $6,000 in damage.

Appellant testified that he had driven the BMW, that he had lied to the officers when he said his name was Jian Safavi, and that he had gone to prison in Texas under a different name. He insisted that he did not know that the car had been stolen. He testified that Fortner told him that the car belonged to Fortner's aunt and that Fortner had her permission to drive it. Appellant believed this story.

Shortly after appellant called Fortner to testify on his behalf, the trial court removed the jury and questioned the witness as follows:

Court: Mr. Fortner, do you understand that the case that we're in trial on is involving a stolen car?

Witness: Yes, sir.

Court: Do you understand that we've had witnesses who have just testified that this car was stolen sometime in June of 1993[sic], and that the police discovered that it was a stolen car when it was stopped at approximately 5:30 in the morning on July 7, 1991? Do you know that?

Witness: Yes, sir.

Court: Do you understand that by admitting driving that car that you face possible charges in this case?

Witness: Yes, sir.

Court: And you are willing to take that chance, being charged with unauthorized use of a vehicle in this case?

Witness: No, I'm not willing to face any charges, but—

Court: How old are you?

Witness: 20.

Court: How old were you at the time?

Witness: 16.

Court: Okay. You understand that you have a right to have a lawyer advise you before you testify in this manner?

Witness: Huh—yes, sir.

Court: Do you understand that anything you say in this case can and probably will be used against you and you could be charged in this case for admission of driving that car? Do you understand that you could be charged with that?

Witness: Yes, sir.

Court: So, what is your decision about testifying?

Witness: Huh, could I speak to the defense attorney?

Court: I don't know if that's the proper person to talk to, because he's representing your friend who is already charged with this offense.

Witness: Yeah.

Court: Do you feel like you need to talk to a lawyer?

Witness: Yes. I mean, I would feel in a situation right here, I mean, if it's possible, if I could talk to a lawyer.

Court: All right. We will take a recess and see if I can find a lawyer to talk to you.

(Short recess.)

Court: Mr. Fortner, this Court has asked Mr. Broussard who is an attorney who practices law in Harris County to consult with you, and you have had that opportunity to talk to Mr. Broussard?

Witness: Yes.

Court: All right. After you have talked to Mr. Broussard, do you still wish to testify in this matter concerning your driving that vehicle that is the subject matter of this case?

Witness: Honestly I really don't know at the time. I don't known whether if I should testify as a witness or—I'm really confused right now. I don't know what to do.

Court: Well, I don't know what you're confused about. You understand that—

Witness: Yeah.

Court: —this defendant is charged with driving a stolen car July 7, 1991.

Witness: Yes, sir.

Court: All right. So, the car is reported stolen in June. Village police officers stop the car, determine it's a stolen (sic) on July 7, 1991. So, there's no question it was a stolen car.

Witness: Yes, sir.

Court: Now, you just admitted on the witness stand that you had been driving that car prior to July 7, 1991?

Witness: Yes, sir.

Court: All right. You could be prosecuted for unauthorized use of a vehicle. You could be charged with that. Whether or not you would be convicted of it remains to be seen, but you could be charged with it.

Witness: Yes, sir.

Court: Part of the situation may be is that the statute of limitations has run on that offense. July 7, 1991, to this date is past the three-year statute of limitations as far as unauthorized use of a vehicle is concerned. You could also be charged with theft of that vehicle.

Witness: Yes, sir.

Court: Which is a five-year statute. By admitting to driving that car, someone could come back and charge you with auto theft of that vehicle. I don't know that they would, but they could.

Witness: Yes, sir.

Court: So, you could be charged with theft of a vehicle. So, now I want to know if you are going to get on the witness stand and admit to driving the car or whatever else you may be admitting to.

Mr. Broussard: Could I speak with him a few moments?

(Short break.)

Court: All right. Mr. Fortner, do you wish to testify or not?

Witness: No, sir.

Appellant's counsel requested that he be allowed to question Fortner before the jury so that Fortner could answer or invoke his right to remain silent in front of the jury. The trial court denied the request. The trial court then instructed the jury, "In regards to the person who was on the witness stand, you are instructed that you are not to regard any testimony that that witness may have given you. It is not for your consideration." Appellant did not object to this instruction.

## FAIR TRIAL

In points of error one and three, appellant argues that his due process rights were violated as a result of the trial court's conduct. Specifically, in point of error one, appellant argues that the trial court injected itself into the trial in such a way as to deprive him of a fair trial. In point of error three, appellant asserts that the trial court "drove" Fortner from the stand by coercing him into exercising his constitutional right to remain silent. In considering these challenges, we review the trial proceedings as a whole.

### Standard of Review

■ An accused is entitled to due process under the federal constitution and to due course of law under the state constitution. *See* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 19; *Ex parte Adams,* 768 S.W.2d 281, 293 (Tex.Crim.App.1989). The Texas constitution provides greater protection than the federal constitution in some instances. *See Heitman v. State,* 815 S.W.2d 681, 690 (Tex.Crim.App.1991).[1] We find no authority holding that the Texas due course of law

---

1. *See Clewis v. State,* 922 S.W.2d 126, 129–30 (Tex.Crim.App.1996) (Texas constitution provides factual sufficiency review of the evidence; federal constitution does not); *Bauder v. State,* 921 S.W.2d 696, 700 (Tex.Crim.App.1996) (state double jeopardy protection is greater than concommitant federal protection); *Autran v. State,* 887 S.W.2d 31, 41–42 (Tex.Crim.App.1994) (federal constitution permits search of closed container but state constitution does not); *Richardson v. State,* 865 S.W.2d 944, 953 (Tex.Crim.App.1993) (use of pen register does not violate federal constitution but may violate state constitution).

provision provides greater protection than the federal due process clause. We therefore consider appellant's state and federal claims in a joint analysis.

In evaluating due process claims, we inquire whether the practice "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Snyder v. Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). In the words of Justice Frankfurter, due process:

> embodies a system of rights based on moral principles so deeply imbedded in the traditions and feelings of our people as to be deemed fundamental to a civilized society as conceived by our whole history. Due process is that which comports with the deepest notions of what is fair and right and just.

*Solesbee v. Balkcom,* 339 U.S. 9, 16, 70 S.Ct. 457, 461, 94 L.Ed. 604 (1950).

**Right to Remain Silent**

In point of error one, appellant argues that his right to due process was violated when the trial court (1) denied him the right to thoroughly examine defense witness Dennis James Fortner (the witness), (2) allowed the witness to remain silent after he had already begun to testify, and (3) improperly intervened in the direct examination of the witness and thereby prevented the witness from testifying.

Appellant's counsel objected to the trial court's "not allowing the witness to testify." The State argues that appellant's objection is inadequate to preserve error. We recognize that a general objection preserves nothing for review. *Goodrich v. State,* 632 S.W.2d 349, 349 (Tex.Crim.App.1982). There are, however, no technical considerations or form of words that must be used to preserve error so long as the objection sufficiently apprises the trial court and opposing counsel of the nature of the complaint. *Ex parte Little,* 887 S.W.2d 62, 65 (Tex.Crim.App. 1994). Here, it was obvious that appellant objected to the trial court's allowing the witness to refuse to testify. The clear meaning of the objection was that the trial court would not allow additional proper testimony.

Accordingly, we hold that appellant has preserved error.

In circumstances such as the one before us, our criminal justice system embodies competing guarantees. In all criminal prosecutions, the accused has the right to compulsory process for obtaining favorable witness testimony. U.S. CONST. amend. VI; TEX. CODE CRIM. P. ANN. art. 1.05 (Vernon 1977). Yet, witnesses are protected from mandatory self-incrimination under the state and federal constitutions. *See* U.S. CONST. amend. V; TEX. CONST. art. I, § 10; *see also Thomas v. State,* 723 S.W.2d 696, 704 (Tex.Crim.App. 1986) (state and federal privileges against self-incrimination are comparable in scope); *Olson v. State,* 484 S.W.2d 756, 772 (Tex. Crim.App.1969). In harmonizing these conflicting guarantees, the accused's right to compel testimony never overrides the witness's right against self-incrimination. *Grayson v. State,* 684 S.W.2d 691, 696 n. 2 (Tex.Crim.App.1984); *Ellis v. State,* 683 S.W.2d 379, 383 (Tex.Crim.App.1984).

If Fortner waived his privilege against self-incrimination, the trial court erred in allowing him to invoke the right. Generally, when an accused voluntarily takes the stand, he waives his privilege against self-incrimination. *Brown v. State,* 617 S.W.2d 234, 236 (Tex.Crim.App.1981); *Myre v. State,* 545 S.W.2d 820, 825 (Tex.Crim.App. 1977); *Hernandez v. State,* 506 S.W.2d 884, 886 (Tex.Crim.App.1974). A witness waives his right against self-incrimination if he does so knowingly, voluntarily, and intelligently. *Brown,* 617 S.W.2d at 236 (Tex.Crim.App. 1981). Waiver is effected if (1) the witness's testimony creates a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth without his full testimony, and (2) the witness had reason to know that his statements would be interpreted as a waiver of the privilege against self-incrimination. *Grayson,* 684 S.W.2d at 695 (citing *Klein v. Harris,* 667 F.2d 274 (2nd Cir.1981)).

Here, unless he waived his right to remain silent by his partial testimony, the witness was entitled to invoke the right be-

cause of the self-incriminating nature of his testimony. *Grayson v. State,* 684 S.W.2d at 695. The witness testified in front of the jury that he was appellant's friend and had been driving the car in question earlier the day he and appellant were arrested. The trial court then instructed the jury to disregard the testimony. We hold that Fortner did not waive his right against self-incrimination.

 Improper testimony is usually cured by the trial court's instruction to the jury to disregard, except in extreme cases. *Kugler v. State,* 902 S.W.2d 594, 597 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd). An "extreme" case is one where it appears that the evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on their minds. *Crawford v. State,* 603 S.W.2d 874, 876 (Tex.Crim.App. [Panel Op.] 1980). We do not believe that this case falls within the "extreme" category. The curative instruction avoided the distorted view Fortner's incomplete testimony would have left. Besides, appellant's complaints about any distortion ring hollow, because the distortion favored him, not the State. Therefore, the first prong of the waiver test is negated. Reviewing the second prong, we are not persuaded that, before the trial court's intervention, the witness understood that further statements could constitute a waiver of his right to remain silent. We conclude that neither prong of the waiver test was met and that, therefore, the witness did not waive his right to remain silent.

### Invocation of "the Fifth"

 Appellant argues that the witness should have been required to invoke his right to remain silent in front of the jury. However, a party has no right to have a witness invoke "the Fifth" in the presence of the jury because refusal of a witness to testify for self-incrimination reasons cannot be made the basis of any inference by the jury, either

favorable to the prosecution or to the accused. *Ellis,* 683 S.W.2d at 382–83.

### Sua sponte warning to witness

 Appellant also argues that he was denied due process of law because the trial court "drove" the witness off the stand by its sua sponte warning to the witness of the potential adverse consequences of testifying. This contention raises the question of when, if ever, a trial court must warn a witness of the potential perils of taking the stand. There are only two instances which might legitimately cause a trial court to believe, in the interest of fairness to the witness, that a warning is necessary: (1) when a witness is unwittingly incriminating himself of a crime; and (2) when a witness is likely to commit perjury.

Such a warning is not required under *Miranda,*[2] which imposes an affirmative duty on police conducting custodial interrogations to warn the suspect of his right to remain silent and to have counsel present. The *Miranda* doctrine stems from the notion that custodial interrogations are "inherently coercive." *New York v. Quarles,* 467 U.S. 649, 654, 104 S.Ct. 2626, 2630, 81 L.Ed.2d 550 (1984); *Oregon v. Elstad,* 470 U.S. 298, 307, 105 S.Ct. 1285, 1291, 84 L.Ed.2d 222 (1985). Before an accused is entitled to *Miranda* warnings, he must be under interrogation. *Id.* Although the resolution of whether an accused has been "interrogated" is determined by the facts of each case,[3] an interrogation for *Miranda* purposes refers to the narrow circumstance of police initiated questioning designed to elicit an incriminating response from a suspect. For example, in *Arizona v. Mauro,* 481 U.S. 520, 530, 107 S.Ct. 1931, 1937, 95 L.Ed.2d 458 (1987), the Court held that the action of the police in permitting the defendant's wife to speak with him in a room visibly occupied by a police officer with a tape recorder did not constitute the "functional equivalent of interrogation."

When a witness takes the stand to testify under oath, *Miranda* concerns do not arise.

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** *See* Jonathan L. Marks, Note, *Confusing the Fifth Amendment with the Sixth: Lower Court Misapplication of the Innis Definition of Interrogation,* 87 Mich. L. Rev. 1073 (1989).

Generally, the witness is not in immediate custody; in fact, he is in custody only if he has been arrested for refusal to comply with a subpoena. Moreover, it is a rare occasion indeed that the witness has not had ample time to think about the impending testimony and to consult an attorney if he so desires. Accordingly, the *Miranda* doctrine does not require that a trial court warn a witness of the perils of testifying.

We find no authority imposing a duty on the trial court to instruct a witness that he does not have to tell the truth when the truth is incriminating, or to iterate that lying under oath is a crime. In fact, there is authority that a trial court is never required to warn a witness of these risks. *United States v. Wong*, 431 U.S. 174, 179, 97 S.Ct. 1823, 1826, 52 L.Ed.2d 231 (1977); *United States v. White*, 589 F.2d 1283, 1286–87 (5th Cir.1979). In *Wong*, a witness who was under investigation testified before a grand jury and was later indicted for perjury based on her testimony before that body. The court held that the witness was not entitled to have the false testimony suppressed on the ground that she was not warned of her right to remain silent. 431 U.S. at 179, 97 S.Ct. at 1826 Likewise, in *White*, the court held that failure of a trial court in a civil case to inform a witness of his right to invoke his privilege did not make his statements inadmissible against him in a criminal prosecution. 589 F.2d at 1286–87.

The better practice is for a trial court not to warn a witness of the inherent risks in testifying, because such warnings may in-fringe upon an accused's right to due process.[4] Moreover, the search for truth is unreasonably inhibited by a witness who would have testified to information relevant to the court proceedings but for the trial court's unnecessary admonishments.

We now consider whether the trial court in this case violated appellant's right to due process and due course of law. In reviewing whether the warnings of a trial court drove a witness from testifying, we consider:

> the circumstances under which a perjury or other similar admonition was made to a witness, the tenor of the warning given, and its likely effect on the witness's intended testimony. If the admonition likely precluded a witness "from making a free voluntary choice whether or not to testify," *Webb*, 409 U.S. at 98, 93 S.Ct. at 353, or changed the witness's testimony to coincide with the judge's or prosecutor's view of the facts, ... then a defendant's right to due process may have been violated.

*Davis v. State*, 831 S.W.2d 426, 438 (Tex. App.—Austin 1992, pet. ref'd) (citing *State v. Melvin*, 326 N.C. 173, 388 S.E.2d 72, 79–80 (1990)).[5]

In this case, the trial court interspersed questions and warnings to the witness after the witness had briefly testified. The tenor of the trial court's questions and warnings were inquisitive; the evident focus was an attempt to ascertain whether the witness knew his rights. Given these circumstances, we conclude that the trial court's warnings

---

**4.** The concern of a witness's being driven from the stand is not unique to a criminal defendant. The State's witnesses are equally subject to the same potential problem. Given the limited circumstances under which the State can appeal, however, this issue would likely be addressed only through a defendant's appeal.

**5.** For example, the conviction in *Webb v. Texas*, 409 U.S. 95, 96, 93 S.Ct. 351, 352, 34 L.Ed.2d 330 (1972) was reversed because the trial court told the defendant's sole witness:

> Now you have been called down as a witness in this case by the Defendant. It is the Court's duty to admonish you that you don't have to testify, that anything you say can and will be used against you. If you take the witness stand and lie under oath, the Court will personally see that you will be indicted for perjury and the liklihood [sic] is that you would get convicted of perjury and that it would be stacked onto what you have already got, so that is the matter you have got to make up your mind on. If you get on the witness stand and lie, it is probably going to mean several years and at least more time that you are going to have to serve. It will also be held against you in the penitentiary when you're up for parole and the Court wants you to thoroughly understand the chances you're taking by getting on that witness stand under oath. You may tell the truth and if you do, that is all right, but if you lie you can get into real trouble. The court wants you to know that. You don't owe anybody anything to testify and it must be done freely and voluntarily and with the thorough understanding that you know the hazard you are taking.

did not preclude the witness "from making a free and voluntary choice whether or not to [continue to] testify." *Webb v. Texas*, 409 U.S. at 98, 93 S.Ct. at 353.

We overrule points of error one and three.

## JURY INSTRUCTION

In point of error four, appellant also argues that the trial court erred in failing to instruct the jury on the full range of punishment options.[6] Appellant does not complain that the punishment charge was erroneous. Rather, he complains that the trial court's comments during voir dire regarding punishment options were improper. Appellant did not object to the trial court's voir dire comments. Thus, no error is preserved. *Sharpe v. State*, 648 S.W.2d 705, 706 (Tex.Crim.App. 1983).

We overrule point of error four.

## INEFFECTIVE ASSISTANCE OF COUNSEL

█ In point of error two, appellant contends that his trial counsel was ineffective by (1) failing to object to the trial court's voir dire comments regarding punishment or to request a clarifying instruction; (2) failing to object to evidence of extraneous offenses during guilt-innocence or to the trial court's handling of the witness; (3) failing to request an instruction on mistake of fact or to object to its absence from the charge; (4) failing to ask the jury to consider community correctional facility time as a sentence; (5) failing to call appellant to testify during the punishment hearing; and (6) failing to offer and argue a lower sentence based on mitigating evidence during the punishment hearing.

Because there was no motion for new trial in this case, there is no evidence in the record as to why trial counsel (1) did not object to comments by the trial court during voir dire; (2) did not object to evidence of extraneous offenses during guilt-innocence; (3) did not request an instruction on mistake of fact; (4) did not ask the jury to consider a certain sentence; (5) did not call appellant as a witness during the punishment phase; and (6) did not offer and argue a lower sentence

based on mitigating evidence during the punishment phase. We must presume, therefore, that counsel had a plausible reason for doing so. *See Roberson v. State*, 852 S.W.2d 508, 511 (Tex.Crim.App.1993). To find that trial counsel was ineffective based on any of the asserted grounds would call for speculation, which we will not do. *See Jackson*, 877 S.W.2d at 771; *Gamble v. State*, 916 S.W.2d 92, 93 (Tex.App.—Houston [1st Dist.] 1996, no pet.).

We overrule point of error two.

We affirm the judgment of the trial court.

COHEN, J., did not participate in the opinion and judgment.

---

**6.** Appellant does not contend that the jury charge at the punishment stage was erroneous.