Affirmed and Memorandum Opinion filed August 17, 2004









Affirmed and Memorandum Opinion
filed August 17, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NOS. 14-03-00910-CR

          14-03-00911-CR

          14-03-00912-CR

____________

 

CARLOS ARMANDO NUNEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

_________________________________________________

 

On Appeal from the 248th District Court

Harris County, Texas

Trial Court Cause Nos. 929143, 929144, & 929588

_________________________________________________

 

M E M O R
A N D U M   O P I N I O N

Appellant entered a plea of not guilty to
three charges of aggravated robbery. 
After a trial by jury, he was convicted of the offenses and sentenced to
forty-five years=
confinement for each offense, to run concurrently.  In four issues, appellant contends (1) he
received ineffective assistance of counsel and (2) the evidence was legally and
factually insufficient to support his convictions.  We affirm.








I.  Factual
Background

Late at night on October 30, 2002, and early
in the morning of October 31, 2002, appellant, Luis Cruz, and another male
conducted a spree of several armed robberies. 
Late in the evening on October 30, Monica Bazile and Mark Samuel drove
home from the AMs. Texas Southern University@ pageant
coronation.  Samuel stepped out of the
car and walked toward Bazile=s
apartment to open the door for her.  A
man approached Samuel and put a gun to his head.  At the same time, another man approached the
door of the car where Bazile was still sitting, and put a gun to her head.  The men stole approximately $100 in cash, a
watch, a CD player, a bottle of cologne, and jewelry.  Bazile positively identified appellant and
tentatively identified Cruz in the video line-up.  At trial, she identified both defendants and
the stolen property found in appellant=s and
Cruz=s
possession.

At approximately 11:30 p.m. on October 30,
2002, Mustafa Yusuf was driving into his garage when he saw two men exit a
black sport utility vehicle enter the garage. 
One man pointed a gun at Yusuf while the other took everything from his
pockets.  While one man continued to
point the gun at Yusuf, the other man attempted to rob Yusuf=s
neighbor, Lawrence Love.  Love was still
in his car when one of the men approached him in his garage. Love honked his
horn until both men left.  Yusuf
identified his cellular telephone, contents of his wallet, watch, and video
camera, which were found in appellant=s and
Cruz=s
possession when they were arrested.  In
the video line-up, Yusuf positively identified Cruz and tentatively identified
appellant.  At trial, Yusuf identified
appellant and Cruz as the men who robbed him.








At approximately 12:15 a.m. on October 31,
2002, Curry Brown had just departed a bus in front of his apartment.  He noticed a dark colored sport utility
vehicle circling the parking lot.  As
Brown walked through the security gate, two men exited the sport utility
vehicle and both held guns to his head. 
The men took Brown=s wallet,
jewelry, CD player, and jacket.  Brown
identified appellant and his co-defendant, Cruz, in a video line-up shortly
after the robbery and at trial.  Brown
also identified the property stolen from him, which was found in the possession
of appellant and Cruz when they were arrested. 

At approximately 2:00 a.m., William Coleman
was returning home when he saw a black sport utility vehicle driving through
the security gate at his apartment complex. 
Coleman parked and exited his vehicle. 
Two men approached him, pointed guns at him and demanded that he give
them Aall his
stuff.@  The men stole $200 in cash and a ring.  Coleman positively identified appellant in
the video line-up and at trial.  Coleman
also identified the ring, which was found on appellant=s finger
when he was arrested.

At the punishment phase of trial, appellant
admitted to the robberies of Brown and Coleman, but said he did not rob
Bazile.  He admitted to being present
when Bazile was robbed, but said Cruz pointed the gun at her.

II.  Discussion

A.  Ineffective Assistance of
Counsel

 

In his first issue, appellant contends he
received ineffective assistance of counsel because his counsel failed to
request a severance of his trial from that of Cruz.  Whether a defendant received effective
assistance of counsel is governed by the Strickland test promulgated by
the United States Supreme Court.  Strickland
v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To prove an ineffective assistance of counsel
claim, the appellant must first show that counsel=s
performance was deficient to the extent his or her assistance fell below an
objective standard of reasonableness.  Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  Second, the appellant must affirmatively
prove prejudice.  Id.  Under the second prong, the record must show
a reasonable probability that, but for counsel=s error,
the outcome of the proceeding would have been different.  Perez v. State, 960 S.W.2d 84, 88
(Tex. App.CAustin 1997, no pet.). 








Appellant bears the burden to prove by a
preponderance of the evidence that his trial counsel was ineffective. Thompson,
9 S.W.3d at 813.  When reviewing a claim
of ineffective assistance, a court must indulge a strong presumption that counsel=s conduct
falls within a wide range of reasonable professional assistance.  Strickland, 466 U.S. at 689.  Further, an allegation of ineffectiveness
must be firmly founded in the record, and the record must affirmatively
demonstrate the supposed ineffectiveness. 
Thompson, 9 S.W.3d at 813. 
When presented with no evidence of counsel=s reasons
for the challenged conduct, an appellate court will presume a strategic
motivation if one can be imagined and will not conclude counsel=s action
was deficient unless the conduct was so outrageous that no competent attorney
would have engaged in it.  Garcia v.
State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).  If the record does not contain a specific
explanation for defense counsel=s
actions, an appellate court cannot reverse a conviction based upon a claim of
ineffective assistance of counsel.  See
Bone v. State, 77 S.W.3d 828, 830 (Tex. Crim. App. 2002).

            In
this case, appellant fails to satisfy the first prong of the Strickland test
because there is nothing in the record to overcome the strong presumption that
counsel=s conduct
was reasonable and professional.  Because
there was neither a motion for new trial, nor a petition for writ of habeas
corpus to explain trial counsel=s
actions, the record is undeveloped and not adequate to reflect any alleged
failings of trial counsel.  Freeman v.
State, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003).  Thus, we must presume that counsel had a
plausible reason for her actions.  See
Safari v. State, 961 S.W.2d 437, 445 (Tex. App.CHouston
[1st Dist.] 1997, pet. ref=d,
untimely filed). To conclude otherwise calls for speculation, and this we will
not do.  See id. (citing Jackson
v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994)). 

In his second issue, appellant contends he
was denied effective assistance of counsel because of the Acumulative
effect of the errors set forth herein.@  Although a number of errors can be found
harmful in their cumulative effect, non-errors may not, in their cumulative
effect, amount to error.  Chamberlain
v. State, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). Because appellant has
demonstrated no deficient performance by his trial counsel, there can be no
cumulative error or harm. Accordingly, his second issue is overruled.








B.  Legal
and Factual Sufficiency of the Evidence

1. 
Standards of Review

 

In his third and fourth issues, appellant
contends the evidence is legally and factually insufficient to support his
conviction for the aggravated robberies of Brown, Bazile, and Coleman.[1]  In a legal sufficiency challenge, we review
the evidence in the light most favorable to the verdict to determine if any
rational fact finder could have found the essential elements of the crime
beyond a reasonable doubt.  King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).  This standard is applied to both direct and
circumstantial evidence. McMillon v. State, 940 S.W.2d 767, 768 (Tex.
App.CHouston
[14th Dist.] 1997, pet. ref=d). In
conducting our review, we do not re-weigh the evidence or substitute our
judgment for that of the fact finder.  King,
29 S.W.3d at 562; Johnson v. State, 967 S.W.2d 410, 412 (Tex. Crim. App.
1998) (stating appellate courts are not fact-finders and may not re-evaluate
the weight and credibility of the record evidence in determining the
sufficiency of evidence).








In conducting a factual sufficiency review,
we view all of the evidence in a neutral light, without favoring either
party.  Johnson v. State, 23
S.W.3d 1, 6B7 (Tex. Crim. App. 2000).  We will set aside the verdict only if (1) the
evidence supporting the verdict, considered by itself, is too weak to support
the finding of guilt beyond a reasonable doubt, or (2) contrary evidence, if
present, is strong enough that the beyond-a-reasonable-doubt standard could not
have been met.  Zuniga v. State,
No. 539-02, 2004 WL 840786, at *7 (Tex. Crim. App. Apr. 21, 2004); see
Zuliani v. State, 97 S.W.3d 589, 593B94 (Tex.
Crim. App. 2003).  When reviewing the
evidence, we must give appropriate deference to the jury findings in order to
prevent intruding on the fact finder=s role as
the sole judge of the weight and credibility of the evidence.  Johnson, 23 S.W.3d at 7.  Therefore, unless the record clearly reveals
a different result is appropriate, we Amust
defer to the jury=s
determination concerning what weight to give contradictory testimonial evidence
because resolution often turns on an evaluation of credibility and demeanor.@  Id. at 8. 

2.  Nature of the Charged Offense and the Law of
Parties

Appellant was charged with aggravated robbery
as primary actor and as a party.  A
person is criminally responsible as a party to an offense if the offense is
committed by his own conduct, by the conduct of another for which he is
criminally responsible, or by both.  Tex. Pen. Code Ann. '
7.01(a).  A person is criminally
responsible for an offense committed by the conduct of another if acting with
intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids or attempts to aid the other person to commit the
offense.  Tex. Pen. Code Ann. '
7.02(a)(2).  A person commits robbery if,
in the course of committing theft he: (1) intentionally, knowingly, or
recklessly causes bodily injury to another; or (2) intentionally or knowingly
threatens or places another in fear of imminent bodily injury or death.  Tex.
Pen. Code Ann. '
29.02(a)(1)B(2).  An aggravated robbery occurs when a person
commits robbery as defined in section 29.02 and he uses or exhibits a deadly
weapon.  Tex. Pen. Code Ann. '
29.03(a)(2). 

In determining whether the accused
participated as a party, the court may look to events occurring before, during,
and after the commission of the offense, and may rely on actions of the
defendant that show an understanding and common design to do the prohibited
act.  Ransom v. State, 920 S.W.2d
288, 302 (Tex. Crim. App. 1994). 
Evidence is sufficient to convict under the law of parties if the
defendant is physically present at the commission of the offense and encourages
its commission by words or other agreement. 
Id. 








3.  Analysis of Appellant=s Challenges to Legal and
Factual Sufficiency 

of the Evidence

 

a. 
Aggravated Robbery of Curry Brown

Appellant first contends the evidence was legally and factually
insufficient to support his conviction for the aggravated robbery of Curry
Brown.  Appellant argues Brown=s
identification was unreliable because the lighting in the area was poor, Brown
was not wearing his glasses, and Brown did not identify which specific role in
the robbery each defendant played.  

The record shows that although Brown
testified the lighting in the apartment complex parking lot was poor, he also
testified that appellant and Cruz were close enough to see.  The record does not support appellant=s
contention that Brown was not wearing his glasses on the night of the
robbery.  The prosecutor commented that
Brown ordinarily wears glasses, but Brown did not testify that he was not
wearing his glasses on the night of the robbery.  Brown positively identified appellant and Cruz
at trial.  With regard to which role
appellant played in the robbery, he was charged both as a primary actor and as
a party.  Brown=s
testimony supports the conclusion that the parties were acting together, each
contributing some part toward the execution of their common purpose.  Finally, when appellant and Cruz were
arrested, they were found in possession of Brown=s
property.

b.  Aggravated Robbery of Monica Bazile

Appellant next contends the evidence is
legally and factually insufficient to support his conviction for the aggravated
robbery of Monica Bazile because Bazile=s
identification of appellant was unreliable. 
Appellant argues Bazile=s vision
was impaired because her glasses were fogged; she did not look at the
perpetrator during the entire robbery because she was told to turn her head;
she was not positive in her identification of appellant; and she was unsure
which role appellant played in the robbery.








The record reflects that although Bazile=s glasses
were initially fogged when the perpetrator opened the door of the vehicle, she
was able to see him and positively identify appellant at trial.  Appellant points to a dialogue between the
prosecutor and Bazile in which it appears Bazile confused Cruz and
appellant.  Appellant contends this
confusion diluted Bazile=s
positive identification of appellant. 
However, when reading the totality of Bazile=s
testimony, the evidence shows that Bazile identified appellant as the man who
held her at gunpoint and Cruz as the man who robbed Samuel.  This testimony is supported by Bazile=s
identification of appellant in the video line-up.  Further, appellant and Cruz were arrested
with Bazile=s and Samuel=s
property in their possession.  With
regard to which role appellant played in the robbery, he was charged both as a
primary actor and as a party.  As with
the Brown robbery, Bazile=s testimony
supports the conclusion that the parties were acting together, each
contributing some part toward the execution of their common purpose. 

c.  Aggravated Robbery of William Coleman

Appellant contends Coleman=s identification
of appellant was tainted by the fact that Coleman misidentified someone else in
the video line-up.  Coleman positively
identified appellant as one of the perpetrators in the video line-up and at
trial.  When asked whether he identified
anyone else in the video line-up, Coleman responded, AActually
I did, but Officer Mejia told me that that wasn=t the
correct one.@ 
The fact that Coleman previously identified someone else as the second
perpetrator was merely a factor for the jury to consider in assessing the
weight of Coleman=s
testimony.  See Livingston v. State, 739 S.W.2d 311, 329B30 (Tex. Crim. App. 1987).  Coleman was positive in his
identification of appellant and appellant presented no evidence contradictory
to Coleman=s testimony.








Reviewing all of the evidence in the light
most favorable to the verdict, we find legally sufficient evidence to support
the conviction of appellant for the aggravated robberies of Brown, Bazile, and
Coleman.  Reviewing all of the evidence
neutrally, we find the evidence supporting the verdict was strong enough to
support the finding of guilt beyond a reasonable doubt and any contrary
evidence was not strong enough to undermine the beyond-the-reasonable-doubt
standard.  Appellant=s third
and fourth issues are overruled.

The judgment of the trial court is affirmed.

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Memorandum
Opinion filed August 17, 2004.

Panel consists of Chief Justice
Hedges and Justices Frost and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).

 











[1]  At the
punishment phase of trial, appellant admitted that he committed the robberies
of Brown and Coleman, but not the robbery of Bazile, although he admitted to
being present while Bazile was robbed. 
Under the prior DeGarmo doctrine, appellant would have waived
these issues.  See DeGarmo v. State,
691 S.W.2d 657 (Tex. Crim. App. 1985). 
The Court of Criminal Appeals, however, overruled, in part, DeGarmo
and held that despite an admission of guilt during punishment, the defendant is
entitled to appellate review of various issues, including sufficiency of the
evidence.  See Leday v. State,
983 S.W.2d 713, 724B26 (Tex. Crim. App. 1998).