Opinion issued October 6, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00986-CR

———————————

Robert Fulton Burns, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 338th District Court

Harris County, Texas



Trial Court Case No. 1226943

 



 

MEMORANDUM OPINION

A jury convicted appellant Robert Fulton Burns of murder and
sentenced him to 45 years in prison.  In
two issues, Burns argues that he received ineffective assistance of counsel at
trial and that the trial court abused its discretion when it overruled an
objection made during the State’s closing argument.  We affirm the judgment.

Background

Burns was accused of murdering
Louis Holiday.  Burns had been living in
Holiday’s house for a week when he went on a three-day cocaine binge.  During this time he used crack cocaine,
including a rock that he stole from Holiday. 
Holiday confronted Burns in the garage about the stolen crack, and the
argument between them turned “physical.” 
Burns testified that before reentering the house, Holiday threatened to
kill him and said that he was going inside to get his gun.  Burns had seen Holiday’s gun on the living
room couch several days earlier.  Burns followed
Holiday into the house with an ax taken from the garage.  As Holiday was searching for his gun in the
sofa, Burns approached him from behind and struck him three times in the head with
the blunt end of the ax.  Holiday
collapsed and died while Burns fled.  Police
later recovered a gun from inside a shoe or boot in Holiday’s bedroom closet.

At trial, Burns argued that he
acted in self-defense and that the house had no ready escape for him.  See Tex. Penal Code Ann. § 9.32 (West 2011)
(establishing justification of deadly force in defense of person).  During direct examination, Burns admitted
that he had been using drugs in the days and hours before the killing and that
he had stolen the crack rock from Holiday. 
The medical examiner who performed the autopsy testified that there had
been at least six blows and chops to Holiday’s head.  Also, the State’s expert in blood spatter
analysis testified that the blood patterns in the living room indicated eleven “events”
of a bloodied object having been swung up or down.

Analysis

I.                 
Ineffective assistance of counsel 

Burns
contends that he received ineffective assistance of counsel at trial.  Specifically, he faults defense counsel for
having elicited testimony about his drug activity on direct examination, which he
argues could constitute “criminal activity” tending to preclude a self-defense
theory under the jury charge.  The jury
instruction referenced by Burns tracks the language of the Penal Code regarding
limitations on the right to use deadly force in self-defense:

(c)  A person who has
a right to be present at the location where the deadly force is used, who has
not provoked the person against whom the deadly force is used, and who is not
engaged in criminal activity at the time the deadly force is used is not
required to retreat before using deadly force as described by this section.

(d) . . . [I]n determining whether an actor described by
Subsection (c) reasonably believed that the use of deadly force was necessary,
a finder of fact may not consider whether the actor failed to retreat.

Tex.
Penal Code Ann. §
9.32(c), (d) (West 2011).  Additionally,
Burns argues that defense counsel’s direct examination regarding his use of
crack cocaine brought into question the soundness of Burns’s mental state and
ability to reasonably perceive a real or apparent danger to himself that would
justify the use of deadly force in self-defense.  See Tex. Penal
Code Ann. § 9.32(a) (“A
person is justified in using deadly force against another . . . when and to the
degree the actor reasonably believes the
deadly force is immediately necessary . . . .”).

          The United States Supreme Court has
established the standard for determining whether trial counsel rendered
ineffective assistance.  Strickland v. Washington, 466 U.S. 668,
687, 104 S. Ct. 2052, 2064 (1984).  To
prevail on a claim of ineffective assistance of counsel under Strickland, an appellant must show that
counsel’s performance fell below an objective standard of reasonableness, and
that but for counsel’s unprofessional error, there is a reasonable probability
that the result of the proceeding would have been different.  Id.;
Andrews v. State, 159 S.W.3d 98, 102
(Tex. Crim. App. 2005).  A failure to
make a showing under either prong of the Strickland
analysis defeats a claim of ineffective assistance.  Rylander
v. State, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

          Assertions of ineffective assistance
must be firmly founded in the record.  Bone v. State, 77 S.W.3d 828, 835 (Tex. Crim.
App. 2002).  Here, the record does not unambiguously
show the reasons for defense counsel’s approach.  Burns did not file a motion for new trial in which
counsel’s strategy or lack thereof could have been developed on the record.  When the record is silent, we must presume
counsel had a sound trial strategy behind his actions.  Busby v.
State, 990 S.W.2d 263, 268–69 (Tex. Crim. App. 1999); Safari v. State, 961 S.W.2d 437, 445 (Tex. App.—Houston [1st
Dist.] 1997, pet. ref’d).

Burns was the only surviving person with first-hand
knowledge of what happened between him and Holiday, and he was the only one
with first-hand knowledge of his own belief about Holiday’s intention to harm
him.  Burns’s testimony may have been
deemed necessary to establish a justification defense, and counsel could have
reasonably decided to present unfavorable facts as part of the direct
examination in order to make Burns appear more credible to the jury and to
diminish the impact of anticipated cross-examination.  Part of defense counsel’s closing argument
supports the inference that this is what he intended: “[Burns] testified.  He did not get up there and give you false
remorse.  ‘No, I did not call the
police.  I’m using dope, just like Mr.
Holiday.  We are in there using dope
together.’  No sugarcoating there.”  Because the elicited testimony about drug use
could have been part of a sound trial strategy, Burns has not established the
first Strickland prong (objectively
unprofessional conduct), and he therefore cannot make out a claim of
ineffective assistance of counsel on direct appeal.  See,
e.g., Yarborough v. Gentry, 540 U.S. 1, 9, 124 S. Ct. 1, 6 (2003)
(explaining that “by candidly acknowledging his client’s shortcomings, counsel
might have built credibility with the jury and persuaded it to focus on the
relevant issues in the case).

We overrule appellant’s first issue.

II.              
State’s closing argument

          In his second issue, Burns argues that
the trial court abused its discretion when it overruled defense counsel’s
objection to the State’s characterization of forensic evidence during closing
argument.  We review the trial court’s
ruling on an objection to closing argument for abuse of discretion.  See
Cole v. State, 194 S.W.3d 538, 545–46 (Tex. App.—Houston [1st Dist.] 2006,
pet. ref’d).  An abuse of discretion
occurs only when the trial judge’s decision was so clearly wrong as to lie
outside the zone of reasonable disagreement. 
See, e.g., Cantu v. State, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992).  Permissible jury argument generally falls
into one of four areas: (1) summation of the evidence; (2) reasonable deduction
from the evidence; (3) an answer to the argument of opposing counsel; or (4) a
plea for law enforcement.  Berry v. State, 233 S.W.3d 847, 859
(Tex. Crim. App. 2007).  Impermissible
closing arguments by a prosecutor include making reference to extraneous
offenses for which the accused is not currently on trial and introducing
prejudicial evidence before the jury which is outside the record.  Borjan
v. State, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990).

          Before examining the allegedly
improper statement made by the State, we review the record as to the underlying
testimony presented at trial.  As part of
its case in chief, the State elicited testimony from Officer C. Duncan, a blood
spatter analysis expert for the Houston Police Department.  Officer Duncan testified as to what the blood
spatter patterns discovered at the crime scene indicated about the number and
nature of the blows to Holiday’s body.

Duncan:      I recognize ten separate events, plus you always
add one for the original impact that created the blood source.  So, in my opinion, there was at least eleven
events that created the impact spatter – the castoff patterns present at the scene.

.
. .

State:          Officer Duncan, the eleven events, the
word “event” as you used it, can that mean an event is a swing of a large
object, such as this ax handle, with or without the head of the ax?

Duncan:      Absolutely.  The events that I’ve described as events was a
swinging motion putting blood in flight apart from an impact into a blood
source.  The impact spatter, the castoff,
is created by this swinging motion of an implement.

Defense counsel asked Officer Duncan to
clarify that an “event” is not necessarily an injury or strike to a person.

Defense:      Are you saying, then, that that instrument
actually came into contact with, let’s say, a person eleven times; is that your
testimony?

Duncan:      No, that is not.

Defense:      What exactly do you mean by an event then?

Duncan:      The event is being the action of swinging
but coming into contact with a blood source. 
Now, there’s more than one blood source, obviously, on the scene.  One, you have the saturated carpet, that
saturated stain.  So if I were to swing,
not even make contact – not make an impact, but come in contact with a saturated
carpet and then drawback, I have reapplied blood onto the implement and have
caused this blood to now fly off with centrifugal force and impact the wall.  So, no, I’m not saying that it came into
contact with the individual eleven times.

During closing argument, the State made
a statement apparently premised on Officer Duncan’s earlier testimony regarding
eleven “events.”

State:          Is this reasonable? Is that sort of
rage reasonable?  Eleven strikes.  That’s one, two –

Court:
        Is there an objection?

Defense:
     Yes.  That is not what the evidence showed.  The CSU said events –
when asked if events were strikes, he said, “No, they are not strikes.”  That was his testimony.

Court:
        Overruled.  Again, this is argument.  You are the exclusive judges of the facts
proved, not the attorneys.

State:          One, two, three, four, five, six, seven,
eight, nine, ten, eleven, and that’s just in my mind thinking how many times it
takes to haul that ax back up over your head and swing it back down.  Hitting or missing his head, there’s that many
events, according to Duncan, that the head of this ax, or that ax blade, went
into the blood source and came back up.

The question before this court is whether the trial court
abused its discretion in overruling defense counsel’s objection.  Burns essentially argues that the court
allowed the State to mislead the jury as to what Officer Duncan had said, and
therefore they were less likely to believe Burns’s testimony that he had struck
Holiday only three times instead of many more times.

Burns
cannot prevail on this theory because the totality of the State’s closing
argument about the spatter evidence was not, in fact, inconsistent with Officer
Duncan’s testimony.  After the court
overruled the objection, the State completed the idea that it had started to
convey.  The prosecutor equated eleven
“events” with “how many times it takes to haul that ax back up over your head
and swing it back down,” “[h]itting or missing his head,” and the number of
times “that the head of this ax, or that ax blade, went into the blood source
and came back up.”  These statements mirror
those made by Officer Duncan or, at least, constitute a reasonable deduction
from his testimony.  See Berry, 233 S.W.3d at 860 (finding even an “aggressive”
statement by a prosecutor to fall within the bounds of permissible jury
argument given that it was otherwise a reasonable deduction from prior
testimony).  Because the State simply
restated Duncan’s testimony or made reasonable deductions therefrom, the trial
court did not abuse its discretion when it overruled defense counsel’s
objection.

We
overrule the second issue.




 

Conclusion

We affirm the judgment of the trial
court.

 

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel consists of Justices Keyes,
Higley, and Massengale.

Do not publish.   Tex. R. App. P. 47.2(b).