

# NUMBER 13-12-00783-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**CARLOS DELGADO REYES,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

### On appeal from the 206th District Court of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Perkes and Longoria
### Memorandum Opinion by Justice Perkes

Appellant Carlos Reyes appeals his conviction of murder, a first-degree felony. *See* TEX. PEN. CODE ANN. § 19.02(b)(1) (West, Westlaw through 2013 3d C.S.). A jury found appellant guilty and sentenced him to eighty years' imprisonment in the Texas Department of Criminal Justice, Institutional Division. By three issues, which we

construe as two, appellant contends: (1) the evidence was legally and factually insufficient to prove appellant intentionally and knowingly killed Carolina Zamarripa with a piece of glass; and (2) trial counsel was ineffective for failing to request a self-defense instruction. We affirm.

## I. BACKGROUND

Firemen found Carolina Zamarripa's body while responding to an activated smoke alarm in her apartment. Zamarripa lay face down on a couch, covered in a blanket, with cuts on her throat, neck, and hands. Called to investigate, police officers found a partially broken alcoholic beverage bottle, blood, a broken kitchen knife, and blood stains on the frame and inside threshold of the front door. There were bloody footprints and shards of broken glass scattered across the apartment floor. In the alley behind her apartment building, investigators found a bloody baseball cap and bloody white shirt.

During a search of Zamarripa's apartment, investigator Hector Rafael De Jesus found appellant's Texas identification card in a wallet underneath the victim's bed. Investigator De Jesus then spoke with appellant's common law wife and showed her pictures of the bloody white shirt and cap. She confirmed that the shirt and cap belonged to appellant and told investigator De Jesus that appellant had returned to their apartment after 10:30 pm on the night of Zamarripa's murder. Appellant appeared to be rushed, and was "screaming and running around."

Shortly after police arrived at Zamarripa's apartment on the night of the murder, appellant used Zamarripa's cell phone to make several phone calls to his aunt and cousins. Appellant told his cousins that he was walking along Expressway 83 in Pharr,

2

and asked for a ride, sounding frantic and desperate. Appellant crossed into Mexico on the night of the murder and was apprehended at the Hidalgo port of entry two days later.[1]

Shortly after his arrest, investigator De Jesus interviewed appellant. He confessed to the murder. In his confession, appellant admitted to smoking crack all day and night with Zamarripa. Appellant stated that Zamarripa "started hitting me and kinda going crazy," and that she cut him in the arm with a knife. Appellant then told investigator De Jesus that he "punched" Zamarripa in the neck with the knife and "slit her throat or something like that." Appellant stated that when he arrived home, he told his girlfriend he "did something real bad," and that he had "killed someone."

Forensic pathologist Dr. Norma Jean Farley performed Zamarripa's autopsy. She stated that Zamarripa had fourteen stab wounds on her head, body, hands, and neck, and that the cuts/abrasions on Zamarripa's hands were indicative of defensive wounds. Dr. Farley stated that the fatal neck wound was most likely created with a glass shard since glass fragments were found on the body and because of the jagged-like appearance of the stab wound. Dr. Farley clarified that although a knife could cause the same type of wound, it would not leave the irregular and jagged wound found on Zamarripa's throat.

After the conclusion of the evidence, appellant's trial counsel requested jury instructions on the lesser-included offenses of manslaughter and aggravated assault with a deadly weapon. The trial court included both instructions in the court's charge.

---

[1] A warrant was issued for appellant's arrest in connection with Zamarripa's murder prior to appellant returning from Mexico. Appellant was attempting to re-enter the United States from Mexico when he was arrested.

## II.     SUFFICIENCY OF THE EVIDENCE

By his first two issues, appellant argues that the evidence presented at trial is legally and factually insufficient to show beyond a reasonable doubt that appellant committed the crime of murder and the evidence is legally and factually insufficient to show beyond a reasonable doubt that appellant caused the death of Zamarripa by cutting her with a piece of glass.[2]

### A.     Standard of Review

The standard for determining whether the evidence is legally sufficient to support a conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original); *see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.).   The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given testimony, and it is the exclusive province of the jury to reconcile conflicts in the evidence. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (en banc) (citing *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996)).   Juries are permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor.   *Hooper v. State*,

---

[2] The *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt.   *See Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.).   Therefore, we will not address appellant's factual sufficiency argument.   *See id.*

214 S.W.3d 9, 14 (Tex. Crim. App. 2007).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

## B. Applicable Law

For a defendant to be convicted of murder, a jury must find that he intentionally or knowingly caused the death of an individual. *See* TEX. PEN. CODE ANN. § 19.02 (West, Westlaw through 2013 3d C.S.). A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result. *Id.* § 6.03(a). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. *Id.* § 6.03(b). A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. Direct evidence of intent or knowledge is not necessary. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (en banc). A jury may infer intent or knowledge from a defendant's acts, words, conduct, and the method of committing the crime and the nature of the wounds inflicted on the victim. *Cordova v. State*, 698 S.W.2d 107, 112 (Tex. Crim. App. 1985) (en banc). In a murder

5

case, evidence of a particularly brutal or ferocious mechanism of death, inflicted upon a helpless victim, can be controlling upon the issue of intent. *See Louis v. State*, 329 S.W.3d 260, 268–69 (Tex. App.—Texarkana 2010), *aff'd*, 393 S.W.3d 246 (Tex. Crim. App. 2012).

**C.     Analysis**

Appellant, in his brief, concedes that he played a role in the death of Zamarripa, but he argues that there was no evidence that he intentionally caused her death.   Rather, appellant contends that his statement tends to show that he acted in self-defense and that a knife was the focus of the struggle.   Appellant's argument presumes his version of the events is correct and disregards much of the testimony presented by the State.   In particular, the State presented evidence showing that there were fourteen wounds on Zamarripa's body, that there were defensive wounds on Zamarripa's hands, and that a glass object caused the lethal injury.

Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province.   *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000).   The jury may choose to believe some testimony and disbelieve other testimony.   *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).   If there is enough credible testimony to support appellant's conviction, the conviction will stand.   *See id.*

The jury was free to believe the State's expert witness's testimony regarding the use of a glass object to perpetrate the fatal blow and to disregard the appellant's statement that a knife was used to perform the fatal blow.   The jury was also permitted to disbelieve appellant's claim that the deceased started the altercation and that he only

6

acted in self-defense when he struck her. In sum, the jury could have inferred from the number and type of wounds that appellant acted with the requisite intent or knowledge to commit murder. *See Louis*, 329 S.W.3d at 268–69.

Viewed in the light most favorable to the verdict, we conclude that a rational jury could have found the essential elements of murder beyond a reasonable doubt. *See Johnson*, 364 S.W.3d at 293–94. We overrule appellant's legal sufficiency issue.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

By his second issue, appellant contends that his trial counsel was ineffective for not requesting a self-defense instruction in the jury charge. We disagree.

### A. Standard of Review

To prevail on his ineffective assistance claim, appellant must show: (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.). Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if appellant rebuts the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142; *Jaynes*, 216 S.W.3d at 851.

7

**B.    Analysis**

Assertions of ineffective assistance must be firmly founded in the record.    *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002).    As the Texas Court of Criminal Appeals has stated:

> Under most circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional. As this Court recently explained, rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation: "[i]n the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel."   A reviewing court can frequently speculate on both sides of an issue, but ineffective assistance claims are not built on retrospective speculation; rather, they must "be firmly founded in the record."

*Sheanette v. State,* 144 S.W.3d 503, 510 (Tex. Crim. App. 2004) (citations omitted).

Here, the record does not unambiguously show the reasons for defense counsel's approach.    Appellant did not file a motion for new trial in which counsel's strategy or lack thereof could have been developed on the record.    When the record is silent, we must presume counsel had a sound trial strategy behind his actions.    *Busby v. State*, 990 S.W.2d 263, 268–69 (Tex. Crim. App. 1999); *Safari v. State*, 961 S.W.2d 437, 445 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd).

In this case, we can only speculate why counsel did not request a self-defense instruction; thus, we presume that counsel's actions were within the wide range of reasonable and professional assistance.    *See id.*    Appellant has not overcome the strong presumption that his trial counsel's conduct fell within the wide range of reasonable

8

professional assistance.    *See Strickland*, 466 U.S. at 689; *Sheanette,* 144 S.W.3d at 510.

We overrule appellant's third issue.

**IV.    CONCLUSION**

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
18th day of December, 2014.