Frederick Lee KNOTTS, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–00–00905–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 25, 2001.

Kyle B. Johnson, Houston, for appellants.

Rikke Burke Graber, Houston, for appellees.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## OPINION

J. HARVEY HUDSON, Justice.

Appellant, Frederick Lee Knotts, was charged by indictment with delivery of more than 1 gram, but less than 4 grams, of cocaine. After hearing the testimony of witnesses, a jury found appellant guilty. The jury subsequently determined appellant to be a habitual offender and assessed his punishment at confinement in the state penitentiary for life. Appellant raises two points of error challenging the sufficiency of the evidence and alleging a denial of due process. We affirm.

On September 11, 1999, Houston Police Officer David Bearden was working as an undercover narcotics officer. While Bearden was driving along a city street looking

for street dealers, he saw a man, Tealzie Randall, standing near the curb. Bearden pulled up to the curb and asked Randall where he could buy some "weed." Randall got in Bearden's pickup truck and the conversation quickly diverted from marijuana to cocaine.

Bearden told Randall that he would purchase $50 of cocaine if he could get it "wholesale." Bearden was directed to drive to a nearby house. Randall got out of Bearden's car and went to the door, but returned after learning the occupant did not have enough cocaine on hand to complete the transaction. Bearden was then directed by Randall to drive to another location where they came upon appellant sitting in an automobile. Bearden gave Randall the money. Randall approached appellant and spoke to him a short while. Randall returned to Bearden with the money and said appellant wanted to move to another location to complete the sale.

Bearden drove, as instructed, to the parking lot of a nearby convenience store. Appellant followed in his car and parked nearby. Randall exited Bearden's truck with the money and walked over to appellant's vehicle. Bearden watched as Randall got in appellant's vehicle; the two men appeared to make an exchange. Randall then exited appellant's car and returned to Bearden's truck with four "rocks" of crack cocaine. As Bearden was inspecting the contraband, appellant got out of his vehicle, walked up to Bearden's window, identified himself as "Fred," and assured Bearden the cocaine was "good." Appellant also gave Bearden his pager number and told him to call when he needed more cocaine.

■ In his first point of error, appellant contends the evidence of delivery is legally insufficient because Bearden did not see an actual transfer of contraband between appellant and Randall. In reviewing the evidence for legal sufficiency, we view all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Rojas v. State*, 986 S.W.2d 241, 246–47 (Tex.Crim.App.1998). We do so whether the case was proven by direct or circumstantial evidence. *Houston v. State*, 663 S.W.2d 455 (Tex.Crim. App.1984).

While the State offered no direct evidence that appellant possessed the cocaine delivered to Officer Bearden, the record contains much circumstantial evidence bearing on the issue. For example, Bearden saw what appeared to be an exchange between appellant and Randall. Moreover, after the apparent exchange, appellant assured Bearden that the cocaine he had just purchased was "good." Further, appellant told Bearden to call him if he needed more cocaine. We find a rational jury could logically deduce from this evidence beyond a reasonable doubt that appellant delivered the contraband at issue. Accordingly, appellant's first point of error is overruled.

In his second point of error, appellant contends he was denied due process when one of his potential witnesses refused to testify due to intimidating threats of prosecution. During the presentation of his defense, appellant attempted to call Tealzie Randall as a witness. However, the record suggests that Randall had also been charged with delivery of cocaine and had pled guilty with a stipulation that he committed the offense with appellant. When Randall was called as a witness, the trial judge conducted a hearing outside the jury's presence.

THE COURT: Are you the same Mr. Randall who the officers have alleged

was present the night that this actually was supposed to have occurred?

THE WITNESS: That's right.

THE COURT: All right. After listening to Mr.—the officer's testimony—and not saying whether I believe or disbelieve it—but I think you're placing yourself in the position—I don't know what your testimony is going to be. But you might be subject to being—the district attorney filing on you for committing perjury *if you testify to something different than what the officer testified to,* and I'm not saying whether that's right or wrong. Just giving you your rights. You do not have to testify. But I've got a lawyer standing by here who would be glad to talk to you about your rights. You want to talk to him about it before you testify?

THE WITNESS: Which one?

THE COURT: Sir?

No, this lawyer here represents the defendant. He can't represent you. That might be a conflict of interest. You understand what I'm telling you? *They may be filing on you for a criminal offense if you testify to something different from what the State thinks occurred.*

[THE STATE'S ATTORNEY]: May I?

THE COURT: I want to be sure he understands what I'm telling him first.

THE WITNESS: Yeah, I understand.

THE COURT: Do you want to waive your Fifth Amendment right and go ahead and testify? I've got a lawyer standing here that can talk to you about

that if you want to talk to a lawyer about it.

THE WITNESS: Well, I'm just going to tell what—

THE COURT: Sir?

THE WITNESS: I was just going to tell what happened.

THE COURT: Well, I'm not interested in what happened. I'm interested in protecting your rights. *And if you say something different than the police say happened, they most likely are going to file on you for perjury. You'll be indicted.* If you think you can fight that—I mean, I'm not saying who's right or who's wrong. I just want to be sure—*I want you to know you place yourself in a position where you could have criminal charges result from it by testifying.* You do not have to testify if you've exercised your Fifth Amendment privilege. If you want to testify, you can waive that. You can certainly tell whatever you want to say. I just want to be sure you understand that.

THE WITNESS: Okay.

THE COURT: Do you want to testify?

THE WITNESS: Right.

THE COURT: All right. You want to give up your Fifth Amendment right and testify?

THE WITNESS: Right. Right.

THE COURT: All right.

[THE STATE'S ATTORNEY]: Judge, when he and I spoke this morning, he did not seem to comprehend what an along with stipulation is.[1] And I think that—I'm not sure how he can

---

**1.** When more than one defendant is charged with an offense, the first defendant to enter a negotiated plea will frequently, as part of the agreement, make a judicial confession that he committed the offense "along with" his codefendant. This defendant is then effectively precluded from later testifying on behalf of his codefendant in a manner that would absolve the codefendant of all responsibility for the crime, because doing so would subject him to possible prosecution for perjury.

give up his Fifth Amendment right without someone explaining—

THE COURT: I've tried to explain to him *if he testifies something contrary to what he's done before, he may be filed on for sure.* And I've got a lawyer. He says he still wants to testify, and that's all I can do.

Do you understand that? Mr. Randall, you understand?

THE WITNESS: I don't understand what you're saying. If I testify, that they'll—

THE COURT: As I understand, from listening to the prosecutor and having listened to the police, that you have signed some statements indicating an along with stipulation. If you would now get on the stand and deny that, they could file on you for perjury.

THE WITNESS: But I talked to my lawyer. He saw the papers that I had signed.

THE COURT: I'm going to—I'm just telling you what can happen if you testify, and that's why you might want to talk to an independent lawyer about your rights if you want to. And I've got one standing by to talk to you if you want to talk to that person. You can give up that right though and testify.

[THE STATE'S ATTORNEY]: *And if you would explain he's on probation out of this court, if he is filed on for a new offense, they will also be filing a motion to revoke his probation.*

[APPELLANT'S COUNSEL]: Judge, I think all of this—I mean, that's all trying to explain to this guy; but it's untruthful testimony—

THE COURT: Okay. I know—and I'm not saying what's truthful and what's not truthful. I don't think—Mr. Justin, would you talk to him and explain to him?

MR. JUSTIN [appointed counsel]: Can I take him out in the witness room?

THE COURT: Sure.

Go in the witness room and talk to him.

(Brief recess.)

THE COURT: All right. Bring Mr. Randall back to the stand.

THE COURT: You are Mr. Tealzie Randall; is that right?

THE WITNESS: Right.

THE COURT: Mr. Randall, you talked to a lawyer now. You may testify if you want to testify, or you may claim your Fifth Amendment right if you do not want to testify. What do you want to do?

THE WITNESS: I believe I'm going to have to take the Fifth.

THE COURT: You want to take the Fifth Amendment?

THE WITNESS: Right.

THE COURT: You do not want to testify then?

THE WITNESS: No, because they— if I testify, they said they'll revoke my probation.

THE COURT: Well, I can't go into that. You want to invoke your Fifth Amendment privilege or not? That's all I want to know.

THE WITNESS: Right.

THE COURT: All right.

(emphasis added).

█ A court has no obligation to caution a witness regarding the perils of perjured testimony. A court may, in the interest of fairness to a witness, caution the witness when he is unwittingly incriminating himself or, due to unusual circumstances, is likely to commit perjury. *Safari v. State,* 961 S.W.2d 437, 443 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd, untimely filed). The better practice, how-

ever, is for a trial court not to admonish a witness of the inherent risks in testifying because such warnings may infringe upon an accused's right to due process. *Id.* at 444. In other words, what the trial court intends as a helpful admonishment may be perceived by the putative witness as a coercive threat.

■ Here, the witness was repeatedly warned by the trial judge that if his testimony deviated from that given by the police officers, he would likely be prosecuted for perjury. Perjury is not defined, however, as testimony contradicting the State's theory of prosecution; rather, perjury is committed only when a witness, with intent to deceive and with knowledge of the statement's meaning, makes a false statement under oath. TEX. PEN.CODE ANN. § 37.02 (Vernon 1994). Thus, we find the "admonition" given by the trial court was erroneous. The error was compounded further when the State's attorney reminded the witness that he was serving a probated sentence; if the State filed perjury charges, it would also file a motion to revoke probation. To what extent the State's attorney was motivated by charitable concern for the witness we cannot tell, but the tactic could reasonably be interpreted as a naked threat intended to intimidate the witness and prevent him from testifying.

■ There is no constitutional right to knowingly present, offer, or rely upon perjured testimony. We also recognize that a witness who makes inconsistent statements under oath, both of which cannot be true, has necessarily committed perjury. TEX. PEN.CODE ANN. § 37.06 (Vernon 1994). Moreover, the witness may be prosecuted for perjury without the need of proving which of his statements is false. *Id.* Further, where there is probable cause to believe perjured testimony has been offered in evidence, the State has a duty to zealously prosecute the offense whether perpetrated by a witness testifying on behalf of the State or the defense. Nevertheless, the primary function of a trial is to ascertain the truth. While two conflicting statements cannot both be true, logic does not dictate that both are false. Thus, a witness is not disqualified from impeaching his previous testimony. The witness, for example, may have had a change of heart, repented of his previous prevarication, and is now prepared to tell the truth even at the risk of incriminating himself. The task of determining whether the witness is truthful rests, as always, with the trier of fact.

■ There is no bright line of demarcation between proper and improper perjury warnings. *Davis v. State*, 831 S.W.2d 426, 438 (Tex.App.—Austin 1992, pet. ref'd). Whether such admonitions violate a defendant's right to due process rests ultimately on the facts of each case. *Id.* If a court undertakes to give a perjury admonition, however, it must be administered cautiously and judiciously. *Id.* Here, we find the tenor and persistence of the warnings were improper. *See Webb v. Texas*, 409 U.S. 95, 98, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972) (holding lengthy admonitions regarding the dangers of perjury may "drive" a witness from the stand thereby depriving the accused of due process).

■ Having found error, we are obliged to conduct a harm analysis. All error, even constitutional error, is subject to a harm analysis unless it rises to the magnitude of "structural error." *Cain v. State*, 947 S.W.2d 262 (Tex.Crim.App.1997). The United States Supreme Court has included within the ambit of "structural error," the total deprivation of the right to counsel at trial, a judge who is not impartial, unlawful exclusion of members of the defendant's race from the grand jury, the right to self-

representation, and the right to a public trial. *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Thus, the error presented here is not "structural error." The error is, nevertheless, constitutional error, and we are obliged to reverse the conviction unless we can ascertain beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Tex.R.App. P. 44.2(a).

 Here, the record demonstrates that despite the coercive nature of the admonitions, the witness persisted in waiving his Fifth Amendment privilege. Only after the witness consulted with appointed counsel did he decide not to testify. Thus, while we find the admonitions were improper, we also find beyond a reasonable doubt that the warnings did not "drive" Mr. Randall from the witness stand; thus, appellant's right to due process was not infringed. Rather, the record indicates the witness exercised his Fifth Amendment privilege only after being privately counseled by an attorney outside the presence of the trial court and prosecutor. The accused's right to compel testimony never overrides a witness's right against self-incrimination. *Safari v. State*, 961 S.W.2d 437, 442 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd, untimely filed). Accordingly, we find the error was harmless.

Appellant's second point of error is overruled, and the judgment of the trial court is affirmed.