IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 6, 2007

Charles R. Fulbruge III
Clerk

No. 05-20208

FREDERICK LEE KNOTTS

Petitioner-Appellant

V.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:03-CV-5302

Before BENAVIDES, CLEMENT, and PRADO, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:[*]

Before this Court is an appeal of the district court's denial of Frederick
Knotts's ("Knotts") petition for a writ of habeas corpus brought pursuant to 28
U.S.C. § 2254. We affirm, although on different grounds than those articulated
by the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

## I. FACTS AND PROCEEDINGS

A grand jury in the 339th District Court of Harris County, Texas indicted Knotts for delivery of more than one gram, but less than four grams, of cocaine. Knotts entered a plea of not guilty and was tried before a jury. The Texas Fourteenth Court of Appeals adequately summarized the facts that were presented to the jury as follows:

> On September 11, 1999, Houston Police Officer David Bearden [("Bearden")] was working as an undercover narcotics officer. While Bearden was driving along a city street looking for street dealers, he saw a man, Tealzie Randall [("Randall")], standing near the curb. Bearden pulled up to the curb and asked Randall where he could buy some "weed." Randall got in Bearden's pickup truck and the conversation quickly diverted from marijuana to cocaine.

> Bearden told Randall that he would purchase $50 of cocaine if he could get it "wholesale." Bearden was directed to drive to a nearby house. Randall got out of Bearden's car and went to the door, but returned after learning the occupant did not have enough cocaine on hand to complete the transaction. Bearden was then directed by Randall to drive to another location where they came upon appellant [Knotts] sitting in an automobile. Bearden gave Randall the money. Randall approached appellant and spoke to him a short while. Randall returned to Bearden with the money and said appellant wanted to move to another location to complete the sale.

> Bearden drove, as instructed, to the parking lot of a nearby convenience store. Appellant followed in his car and parked nearby. Randall exited Bearden's truck with the money and walked over to appellant's vehicle. Bearden watched as Randall got in appellant's vehicle; the two men appeared to make an exchange. Randall then exited appellant's car and returned to Bearden's truck with four "rocks" of crack cocaine. As Bearden was inspecting the contraband, appellant got out of his vehicle, walked up to Bearden's window, identified himself as "Fred," and assured Bearden the cocaine was "good." Appellant also gave Bearden his pager number and told him to call when he needed more cocaine.

Knotts v. State, 61 S.W.3d 112, 113–14 (Tex. App. 2001). A chemist with the Houston Police Department Crime Lab testified that the cocaine weighed 1.1

grams, and Bearden testified that the cocaine weighed approximately 1.22 grams.

At trial, Knotts called Randall as his only witness.[1] After Randall took the witness stand, however, the following exchange occurred outside of the presence of the jury:

> THE COURT: Are you the same Mr. Randall who the officers have alleged was present the night that this actually was supposed to have occurred?
>
> [RANDALL]: That's right.
>
> THE COURT: All right. After listening to Mr.—the officer's testimony—and not saying whether I believe or disbelieve it—but I think you're placing yourself in the position—I don't know what your testimony is going to be. But you might be subject to being—the district attorney filing on you for committing perjury if you testify to something different than what the officer testified to, and I'm not saying whether that's right or wrong. Just giving you your rights. You do not have to testify. But I've got a lawyer standing by here who would be glad to talk to you about your rights. You want to talk to him about it before you testify?
>
> [RANDALL]: Which one?
>
> THE COURT: Sir? No, this lawyer here represents the defendant. He can't represent you. That might be a conflict of interest. You understand what I'm telling you? They may be filing on you for a criminal offense if you testify to something different from what the State thinks occurred.
>
> [PROSECUTOR]: May I?
>
> THE COURT: I want to be sure he understands what I'm telling him first.
>
> [RANDALL]: Yeah, I understand.

---

[1] For his role in the instant offense, Randall was charged with and pled guilty to delivery of cocaine. As part of his guilty plea, Randall entered into an "along with" stipulation, where he confessed to committing the offense with Knotts. Nevertheless, an affidavit from Knotts's counsel stated that Randall was supposed to testify that Knotts was not involved in the instant drug transaction.

THE COURT:  Do you want to waive your Fifth Amendment right and go ahead and testify?  I've got a lawyer standing here that can talk to you about that if you want to talk to a lawyer about it.

[RANDALL]:  Well, I'm just going to tell what—

THE COURT:  Sir?

[RANDALL]:  I was just going to tell what happened.

THE COURT:  Well, I'm not interested in what happened.  I'm interested in protecting your rights.  And if you say something different than the police say happened, they most likely are going to file on you for perjury.  You'll be indicted.  If you think you can fight that—I mean, I'm not saying who's right or who's wrong.  I just want to be sure—I want you to know you place yourself in a position where you could have criminal charges result from it by testifying.  You do not have to testify if you've exercised your Fifth Amendment privilege.  If you want to testify, you can waive that.  You can certainly tell whatever you want to say.  I just want to be sure you understand that.

[RANDALL]:  Okay.

THE COURT:  Do you want to testify?

[RANDALL]:  Right.

THE COURT:  All right.  You want to give up your Fifth Amendment right and testify?

[RANDALL]:  Right. Right.

THE COURT:  All right.

[PROSECUTOR]:  Judge, when he and I spoke this morning, he did not seem to comprehend what an along with stipulation is.  And I think that—I'm not sure how he can give up his Fifth Amendment right without someone explaining––

THE COURT:  I've tried to explain to him if he testifies something contrary to what he's done before, he may be filed on for sure.  And I've got a lawyer.  He says he still wants to testify, and that's all I can do.

Do you understand that?  Mr. Randall, you understand?

[RANDALL]:  I don't understand what you're saying.  If I testify, that they'll—

4

THE COURT: As I understand, from listening to the prosecutor and having listened to the police, that you have signed some statements indicating an along with stipulation. If you would now get on the stand and deny that, they could file on you for perjury.

[RANDALL]: But I talked to my lawyer. He saw the papers that I had signed.

THE COURT: I'm going to––I'm just telling you what can happen if you testify, and that's why you might want to talk to an independent lawyer about your rights if you want to. And I've got one standing by to talk to you if you want to talk to that person. You can give up that right though and testify.

[PROSECUTOR]: And if you would explain he's on probation out of this court, if he is filed on for a new offense, they will also be filing a motion to revoke his probation.

[APPELLANT'S COUNSEL]: Judge, I think all of this—I mean, that's all trying to explain to this guy; but it's untruthful testimony—

THE COURT: Okay. I know—and I'm not saying what's truthful and what's not truthful. I don't think—Mr. Justin, would you talk to him and explain to him?

MR. JUSTIN [appointed counsel]: Can I take him out in the witness room?

THE COURT: Sure. Go in the witness room and talk to him.

(Brief recess.)

THE COURT: All right. Bring Mr. Randall back to the stand.

THE COURT: You are Mr. Tealzie Randall; is that right?

[RANDALL]: Right.

THE COURT: Mr. Randall, you talked to a lawyer now. You may testify if you want to testify, or you may claim your Fifth Amendment right if you do not want to testify. What do you want to do?

[RANDALL]: I believe I'm going to have to take the Fifth.

THE COURT: You want to take the Fifth Amendment?

[RANDALL]: Right.

THE COURT: You do not want to testify then?

[RANDALL]: No, because they—if I testify, they said they'll revoke my probation.

THE COURT: Well, I can't go into that. You want to invoke your Fifth Amendment privilege or not? That's all I want to know.

[RANDALL]: Right.

THE COURT: All right.

Knotts, 61 S.W.3d at 114–16. Randall thus did not testify, and on May 16, 2000, the jury convicted Knotts for delivery of cocaine and sentenced him to life in prison as a habitual offender.

On direct appeal, Knotts argued, in part, that he was denied due process of law when Randall refused to testify because of the intimidating warnings and threats of the trial court and prosecution. The Texas Fourteenth Court of Appeals agreed with Knotts that a constitutional error resulted from the trial court's admonition and prosecution's threat to Randall, but held that they were harmless and thus affirmed his conviction on October 25, 2001. The Texas Court of Criminal Appeals refused Knotts's petition for discretionary review on April 10, 2002. Knotts then filed a state application for a writ of habeas corpus on June 30, 2003, but the Texas Court of Criminal Appeals denied it without a written order, based on the findings of the trial court, on November 5, 2003.

On November 13, 2003, Knotts, proceeding pro se, filed a federal petition for a writ of habeas corpus, which presented six claims for review, including his witness intimidation argument. On February 11, 2005, the district court, however, granted the Director of the Texas Department of Criminal Justice's ("the Director") motion for summary judgment, dismissed Knotts's petition, and denied Knotts's request for a certificate of appealability ("COA"). On June 13, 2005, Knotts filed a motion for a COA in this Court, and on July 10, 2005, this Court granted a COA on the following issue: "[W]hether the district court

properly concluded that the state appellate court's application of harmless error analysis to Knotts's witness intimidation claim did not constitute an unreasonable application of clearly established federal law as determined by the Supreme Court."

## II. STANDARD OF REVIEW

On a federal habeas appeal, "we review the district court's findings of fact for clear error and review its conclusions of law de novo, applying the same standard of review to the state court's decision as the district court." Garcia v. Quarterman, 454 F.3d 441, 444 (5th Cir. 2006) (internal quotations omitted). "If the issue is a mixed question of law and fact, such as the assessment of harmless error, we review the district court's determination de novo." Id.

Knotts filed his federal habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA") and thus the deferential AEDPA standard of review applies to his claim. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Hill v. Johnson, 210 F.3d 481, 484 (5th Cir. 2000). Under AEDPA, this Court evaluates the merits determination of the state habeas court to determine if it either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The reference to "clearly established Federal law, as determined by the Supreme Court of the United States" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision." Yarborough v. Alvarado, 541 U.S. 652, 660–61 (2004) (internal quotations omitted). Reviewing courts are to "look for the governing legal principle or principles set forth by the Supreme Court" at that time. Id. at 661 (internal quotations omitted). A decision is contrary to established federal

law when it "reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts." Miniel v. Cockrell, 339 F.3d 331, 337 (5th Cir. 2003). This Court notes that a state court's decision will not be disturbed where it is premised on an erroneous or incorrect, but not unreasonable, application of federal law. Williams v. Taylor, 529 U.S. 362, 410 (2000).

## III. DISCUSSION

The Fifth, Sixth, and Fourteenth Amendments of the United States Constitution concomitantly provide a criminal defendant with the constitutional right to present a defense by compelling the attendance and presenting the testimony of his own witnesses. Pennsylvania v. Ritchie, 480 U.S. 39, 56 (1987); Washington v. Texas, 388 U.S. 14, 18–19 (1967). This right guarantees that a defendant may "present witnesses to establish his defense without fear of retaliation against the witness by the government" or any other improper governmental interference. United States v. Bieganowski, 313 F.3d 264, 291 (5th Cir. 2002) (internal quotations omitted). The Supreme Court has stated that this particular "right is a fundamental element of due process of law." Washington, 388 U.S. at 19. The government, therefore, cannot substantially interfere with a defense witness's decision to testify without violating the defendant's due process rights. Webb v. Texas, 409 U.S. 95, 98 (1972) (per curiam); Bieganowski, 313 F.3d at 291. However, in order to demonstrate such a substantial interference and thus a due process violation, the defendant must show a causal connection between the governmental action and the witness's decision not to testify. See Bieganowski, 313 F.3d at 291–92; United States v. Thompson, 130 F.3d 676, 687 (5th Cir. 1997).

In the instant case, the state appellate court applied Webb and held that "the tenor and persistence of the warnings [given to Randall by the trial judge]

were [constitutionally] improper." Knotts, 61 S.W.3d at 117. The court also found constitutional error in the substance of the trial court's warnings, which defined perjury as any statement that contradicted the government's version of events, and in the prosecution's threat to revoke Randall's parole if he testified. Id. The court held that the intimidating statements made to Randall, Knotts's sole witness at trial, constituted a substantial interference with Knotts's right to present witnesses in his defense. Id. at 118. Nevertheless, the court found this error to be harmless because "despite the coercive nature of the admonitions, the witness persisted in waiving his Fifth Amendment privilege. Only after the witness consulted with appointed counsel did he decide not to testify." Id. The state habeas court found no error with the state appellate court's application of harmless error in this instance.

In his federal habeas petition, Knotts argues that the state court failed to apply clearly established federal law as established by the Supreme Court when it engaged in harmless error analysis for his witness intimidation claim. The Director, on the other hand, argues that the state court's application of harmless error analysis was not an unreasonable application of clearly established federal law. The district court agreed with the Director, granted his motion for summary judgment, and dismissed Knotts's petition. This Court, however, granted Knotts's motion for a COA on one issue: "whether the district court properly concluded that the state appellate court's application of harmless error analysis to Knotts's witness intimidation claim did not constitute an unreasonable application of clearly established federal law as determined by the Supreme Court."

Based upon our review of the record and the applicable law, we conclude that the district court erred when it held that the state appellate court reasonably applied harmless error analysis to Knotts's witness intimidation claim. In our view, the state court's analysis of harmless error was itself error.

As previously stated, the state court found a due process violation, but held that it was harmless because Randall refused to testify based on the advice of independent counsel, not the trial court's perjury admonitions or the prosecution's threats. Instead of considering whether the improper admonitions and threats caused Randall not to testify in its harmless error analysis, the state court should have considered whether the purported due process violation (prevention of Randall's testimony) influenced the jury's verdict, as that is the question posed by the Supreme Court. See, e.g., Fry v. Pliler, 127 S. Ct. 2321, 2328 (2007) (holding that "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard"); Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (stating that the reviewing court must consider whether the constitutional violation "had a substantial and injurious effect or influence in determining the jury's verdict" (internal quotations omitted)); United States v. Weddell, 800 F.2d 1404, 1411 (5th Cir. 1986) (holding that the district court, in a case involving governmental interference with a defense witness, must evaluate "how [the witness]'s testimony would have affected the jury's assessment of the evidence" in considering harmless error). The state court, however, did not do so and its consideration of causation as part of its harmless error analysis was an unreasonable application of clearly established federal law as determined by the Supreme Court.

Notwithstanding, because the state court expressly found that governmental action did not cause Randall not to testify, we conclude that Knotts's constitutional right to due process was not violated under Webb. The Supreme Court has provided that "it surely is not a requirement that federal courts actually defer to a state-court application of the federal law that is, in the independent judgment of the federal court, in error." Williams, 529 U.S. at 387. Given the state court's finding that Randall's failure to testify was not the result

of the trial court's or prosecution's actions, we are not precluded from holding that the trial court and prosecution did not violate Knotts's right to due process. In Webb, the Supreme Court concluded "that the judge's threatening remarks, directed only at the single witness for the defense, effectively drove that witness off the stand, and thus deprived the petitioner of due process . . . ." 409 U.S. at 98. The Supreme Court linked the due process violation to the fact that the threatening remarks caused the witness not to testify. Following this holding, this Court has repeatedly held that a defendant must demonstrate a causal connection between the governmental action and the witness's choice not to testify. See Bieganowski, 313 F.3d at 291–92; Thompson, 130 F.3d at 687; United States v. Viera, 839 F.2d 1113, 1115 (5th Cir. 1988). Consequently, the state court should have simply held that there was no due process violation, which would have obviated any harmless error analysis. See United States v. Saunders, 943 F.2d 388, 393 (4th Cir. 1991) ("Because [the defendant] has not demonstrated a due process violation, we need not reach the harmless error analysis."). In light of the state court's finding that Randall's failure to testify was attributable solely to Randall's legitimate invocation of his Fifth Amendment right based on the advice of independent counsel––and not governmental action––there can be no showing that Knotts's constitutional right to due process was actually violated. Therefore, the district court's ultimate denial of Knotts's petition for habeas relief was proper.

## IV. CONCLUSION

The district court's denial of Knotts's petition for a writ of habeas corpus is AFFIRMED.

11